Sharon HOLLOWAY, et al.

v.

GAYLORD CHEMICAL et al.

Civil Action No. 95–3474.

United States District Court,
E.D. Louisiana.

March 26, 1996.

Gregory David Guth, Stuart Housel Smith, James R. Cox, Law Offices of Sacks & Smith, New Orleans, LA, for Sharon P. Holloway.

Frederick Robert Campbell, Thomas P. Anzelmo, Lisa Miley Geary, Charles Edward Sutton, Jr., Campbell, McCranie, Sistrunck, Anzelmo & Hardy, Metairie, LA, for Gaylord Container Corp.

Edward Brewster Dittmer, II, Richard Finley Knight, Talley, Anthony, Hughes & Knight, Bogalusa, LA, Thomas Kuhns, Kirkland & Ellis, Chicago, IL, David F. Tanaka, Gaylord Container Corp., Deerfield, IL, for Gaylord Chemical Corp.

Glenn Gill Goodier, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for CNA Insurance Company.

Gerald Edward Meunier, Gainsburgh, Benjamin, David, Meunier, Noriea & Warshauer, New Orleans, La, for Robyn Johnston.

Val Patrick Exnicios, Liska, Exnicios & Nungesser, New Orleans, LA, Rhonda Peters.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the issue of federal subject-matter jurisdiction. For the reasons that follow, the Court finds that no federal question jurisdiction exists.

### Background

During the late afternoon of October 23, 1995, a cloud of nitrogen tetroxide formed over the city of Bogalusa, Louisiana. The chemical escaped from a tank car located on

property owned by Gaylord Chemical Company. The company used the chemical to make paper bags. For the next two days, the town called for the evacuation of certain affected sectors of the city while it worked to combat the presence of the chemical; nearly 2,700 residents left their homes. Residents began returning home on the evening of October 25, after crews neutralized the tank's contents by flooding it with special preparations.

Over the next few months, residents filed approximately sixty lawsuits in state and federal court. Eighteen of these suits originated here in federal district court; the others were filed in state court but then were removed by the defendants to federal court. In addition, two state court suits involve declaratory judgment requests regarding insurance coverage; the declaratory relief cases were removed with the personal injury cases. Then, in January 1996, separate plaintiffs filed a "citizen suit" in federal court for monitoring the environmental and natural resources impact that invokes the relevant provisions of CERCLA and RCRA.

The federal complaints premised jurisdiction on the existence of a federal question. Specifically, several of the pleadings claimed response costs under the Comprehensive Environmental Response and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, and the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. 6902 *et seq.* In addition, they set forth a host of claims for relief under state tort law. In the removed cases, the removing defendants invoked the same grounds for federal jurisdiction.

Thereafter, the Court raised the issue of subject-matter jurisdiction *sua sponte,* and asked the parties in the originally-filed cases for briefing. Then, after the defendants removed the state court cases, the Court requested a joint motion to remand and a joint opposition by the removing defendants. The parties timely submitted their memoranda, and the Court held a hearing on February 28, 1996. After this hearing, the Court re-

quested additional briefing.[1] The Court now considers the parties' responses to these questions in making its jurisdictional determination. The questions intensely focus on our state-federal structure and are driven by an important national policy: that federal courts are courts of limited jurisdiction.

*Law and Application*

### I.

■■■ The Constitution confers the federal judiciary with limited jurisdiction. As such, Article III not only permits, but commands the Court to question its own power and authority to hear a case. Several principles animate this analysis. It is presumed that a federal court lacks jurisdiction over a lawsuit until such time as the plaintiff proves its existence. *See Kokkonen v. Guardian Life Ins. Co.,* —— U.S. ——, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). The parties may raise jurisdiction by motion, or the Court may do so on its own motion. *Louisville & Nashville Railroad v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The existence of a federal question must be plain from the face of the complaint. *Id.* Lack of subject-matter jurisdiction is not a waivable defect; and, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject-matter, the court shall dismiss the action." FED.R.CIV.P. 12(h)(3). With these precepts in mind, the Court considers the existence of subject-matter jurisdiction over the originally-filed cases and in those removed here from state court.

### II.

#### A. Original Jurisdiction

Congress passed CERCLA in 1980, and, as the volumes of subsequent litigation attest, the statute does not speak with utmost clarity. The courts have agreed, however, that CERCLA confers a private right of action on "any ... person" who has incurred "neces-

---

1. (1) Is there a cognizable claim under the federal statutes (CERCLA or RCRA)? If so, is that claim predominated by state law claims so as to defeat federal jurisdiction? (2) Were the federal statutes intended to cover the mass toxic tort setting, as opposed to toxic dumping? (3) What claims do plaintiffs make that implicate the National Contingency Plan (NCP)? (4) How do any of the plaintiffs' federal claims advance the purposes of the federal statutes in question?

sary costs of response ... consistent with the national contingency plan." CERCLA, § 107(a)(4)(B) (42 U.S.C. § 9607(a)(4)(B)). It is this provision that the plaintiffs here invoke for jurisdiction and relief.

■ A private party claim under CERCLA must have four elements: (1) identification of a potentially liable party, as defined in Section 107(a); (2) the release of a hazardous substance, or a threat that it may be released; (3) the release has caused the plaintiff to incur response costs; and (4) the costs for which the plaintiff seeks reimbursement were both "necessary" and "consistent with the national contingency plan." *See, e.g., Ambrogi v. Gould, Inc.,* 750 F.Supp. 1233, 1239 (M.D.Pa.1990); *see also Berry v. Armstrong Rubber Co.,* 989 F.2d 822, 828 (5th Cir.1993).

■ CERCLA creates four categories of potentially responsible parties:

(1) the owner and operator of a vessel or facility,[2]

(2) any person who at the time of disposal ... owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who ... arranged for disposal or treatment ... of hazardous substances owned or possessed by such person, by any other party or entity, at any

facility ... owned or operated by another, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, from which there is a release or a threatened release ... of a hazardous substance.

§ 107(a). The parties appear to agree that nitrogen tetroxide qualifies as a "hazardous substance"[3] "released"[4] during the incident on October 23. The Court finds further that the Gaylord plant, at which the incident occurred, could fall within the definition of a "facility."[5] Thus, the original plaintiffs have minimally satisfied the first two elements of a CERCLA claim.

The viability of plaintiffs' complaint rests, then, entirely upon one question: whether the plaintiffs incurred any "response costs" recognized by CERCLA. Again, the statute provides a starting point. "Response costs" are those expended in

the cleanup or removal of released hazardous substances from the environment, ... [including] such actions as may be necessary to monitor, assess, and evaluate the release ..., the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release. The term

2. CERCLA broadly defines "facility" as "any building, structure, installation ... storage container, motor vehicle, [or] rolling stock ... [or] any site or area where a hazardous substance has been deposited, stored, disposed or, or placed, or otherwise come to be located; but does not include any consumer product in consumer use." CERCLA § 101(9).

3. *See* § 101(14) (defining "hazardous substance"). Although the Court notes that nitrogen tetroxide ($N_2O_4$) does not itself appear on the list, 40 C.F.R. § 302.4 (table 302.4) (1995), nitrogen dioxide ($NO_2$) does. The cloud that formed over the chemical plant certainly contained a quantity of the latter, produced by the dissociation of the nitrogen tetroxide gas in the surrounding air.

4. Included in the definition of "release" is "leaking ... emitting ... discharging ... or escaping ... into the environment." § 101(22); *see also* § 101(8) (placing the "ambient air" within the definition of "environment").

5. The removed plaintiffs attempt to invoke the "consumer product in consumer use" exception

contained in the definition of a CERCLA "facility." Their theory ignores the statutory language. On its face, Section 101(9) does not exempt from coverage every hazardous substance in "consumer use," as their argument implies. It excepts, by its terms, only those "sites" or "areas" where hazardous substances are located that constitute "consumer products in consumer use." *Id.* Thus, in *Dayton Indep. Sch. Dist. v. U.S. Mineral Products Co.,* 906 F.2d 1059, 1065–66 (5th Cir. 1990), the Fifth Circuit rejected the plaintiffs' attempt to sue the manufacturer of blocks containing asbestos, on grounds that the blocks were not nor did the schools built with those blocks, fall within the exception. *Id.* at 1066; *Kane v. United States,* 15 F.3d 87, 89 (8th Cir.1994) (following *Dayton* in dismissing CERCLA claims for asbestos contamination in residence); *see also Amcast Industrial Corp. v. Detrex Corp.,* 2 F.3d 746, 750–51 (7th Cir.1993) (specifically rejecting argument that spilled chemicals used in production were exempt under "consumer use" exception).

includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for.... and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment.

Section 101(23), (24) (defining "removal" and "remedial" actions). The original complaint claims response costs, including costs for "evaluation, monitoring and assessment of the Plaintiffs' persons and property, including attorneys' fees and administrative costs." Civ. No. 95–3474, *Complaint*, at ¶ XIII. Moreover, the proposed amended complaint merely recites the mantra of the definitional text of the statute.

The original plaintiffs (and the removing defendants) enumerate three types of response costs: costs associated with investigating and monitoring contamination on their property; expenditures for cleansing their property of hazardous substances (styled as "remediation costs"); and the costs expended during the temporary partial evacuation of Bogalusa. Thus, the Court must ask: does CERCLA allow the plaintiffs to recover any of these expenses?

## B.

■ The Court begins with the structure and purpose of the statute. Enacted in 1980, CERCLA sought to meet in two ways the environmental and health problems posed by hazardous materials: by imposing national standards for cleaning up sites; and by expediting cleanup activities "by providing [financial] means [for] both government and private actions and by placing the ultimate financial burden upon those most responsible for the danger." *Ambrogi v. Gould, Inc.*, 750 F.Supp. 1233, 1248 (M.D.Pa.1990). Hence, CERCLA's strict liability provisions, *see, e.g., United States v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir.1993); its broad sweep of "potentially responsible parties," *see* § 107(a); and its equitable allocation of the costs, *see* § 113(f)(1).

■ But the structure of the statute equally sheds light on what it does *not* cover:

compensation to private parties for bodily and economic injury traditionally within the reach of state tort law. A review of CERCLA's application shows that traditional damages otherwise available through tort doctrine are universally unrecoverable under CERCLA. For example, the circuit courts have disallowed medical costs. *See Durfey v. E.I. DuPont Co.*, 59 F.3d 121 (9th Cir.1995); *Price v. United States Navy*, 39 F.3d 1011 (9th Cir.1994); *Daigle v. Shell Oil Co.*, 972 F.2d 1527 (10th Cir.1992); *but see Brewer v. Ravan*, 680 F.Supp. 1176, 1179–80 (M.D.Tenn.1988) (taking broad view of "public health" language in CERCLA and RCRA, and allowing recovery of medical testing and monitoring). Likewise, economic losses, such as claims for the diminished value of property located near toxic waste sites, have been rejected. *E.g., Artesian Water Co. v. Government of New Castle County*, 851 F.2d 643, 650 (3d Cir.1988); *Wehner v. Syntex Corp.*, 681 F.Supp. 651, 653 (N.D.Cal.1987). The statute itself also excludes pain and suffering, emotional distress, and other related remedies.

The exclusion of these damages from the statutory scheme suggests and illustrates that CERCLA's purpose lies not in compensating victims, but in encouraging fast, efficient cleanup. Those private parties entitled to recover their costs are those parties who *engaged* in cleanup. They are the people at whom CERCLA directs its incentives: financial recovery of necessary costs associated with ridding the environment of the hazards. Lacking these incentives, Congress reasoned, private parties would not, or could not, act toward the public good; and it is the public good with which CERCLA is concerned. The private good requires no such incentives for pursuit. Traditional state law remedies are available.

■ In sharp contrast, the plaintiffs' claims here implicate their private well-being. It is worth noting that, in fifteen years of CERCLA litigation, only one court has even entertained a mass tort lawsuit under CERCLA, *see Romeo v. General Chemical Corp.*, 1994 WL 519685 (N.D.Cal.1994); and even that court found the plaintiffs' federal

claims legally ungrounded. *Id.* at *5 (dismissing CERCLA suit for lack of any cognizable response costs). The reason is clear: the statute provides a remedy for a specific class of problems—the prompt cleanup of hazardous waste sites. *See Exxon Corp. v. Hunt,* 475 U.S. 355, 359–60, 106 S.Ct. 1103, 1108, 89 L.Ed.2d 364 (1986) (holding Superfund money unavailable to "compensate private parties for economic harms that result from discharges of hazardous substances."); *Carroll v. Litton Systems, Inc.,* 1990 WL 312969, at *60–61 (W.D.N.C.1990). As more than one court has observed, CERCLA is not designed to cure all ills relating to hazardous materials. *E.g., Daigle,* 972 F.2d at 1535 (reviewing legislative history of statute and concluding that "both houses of Congress considered and rejected any provision for recovery of private damages unrelated to the cleanup effort."); *Rhodes v. County of Darlington,* 833 F.Supp. 1163, 1189 (D.S.C.1992) (same). As such, CERCLA neither supplants nor duplicates traditional tort remedies; it simply redresses different wrongs.

The damages pleaded by the plaintiffs, therefore, cannot fit within the statutory scheme. On the day of the incident, the plaintiffs themselves took no active steps toward cleanup; others neutralized the chemical threat. And unlike the homeowners in *Tanglewood,* for example, the plaintiffs here left their residences primarily in fear of their own safety—an understandable response, but not a "necessary response" taken primarily to further the goal of prompt, efficient cleanup of the perceived hazard. In contrast, the Tanglewood subdivision residents—whose houses rested on a former toxic dump site—were forced to relocate because the cleanup effort required the demolition of their houses. *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1575 (5th Cir.1988); *see also Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 669–70 (5th Cir. 1989) (holding that "[t]o justifiably incur re-sponse costs, one necessarily *must have acted* to contain a release threatening the public health or the environment.") (emphasis added). Any expenses the plaintiffs here incurred because of evacuation may well be compensable; but they are not compensable under CERCLA.

The claimed "investigative" and "remediation" damages fall even farther from the statutory mission. As an initial matter, the plaintiffs' proposed amended complaint nowhere cites any specific costs incurred by any individual; nor does it claim that these costs, if any, were consistent with the National Contingency Plan.[6] The proposed pleading is likewise devoid of facts from which the Court might infer the existence of these requirements.

Even if the Court were to overlook the lack of these decisive allegations, however, the plaintiffs' claims must still fail. Simply put, the proposed amended complaint—drafted after several months of limited jurisdiction discovery—contains nothing from which the Court could find that any hazard remains that is even worth investigating, monitoring, or remedying. The lack of such allegations is not only troubling; it is fatal to the parties' efforts to federalize the jurisdiction of the state courts. *E.g., McGregor v. Industrial Excess Landfill, Inc.,* 856 F.2d 39, 42–43 (6th Cir.1988) (dismissing CERCLA claim when complaint pleaded nothing concerning "necessity" of response costs incurred, or consistency with the National Contingency Plan); *Bunger v. Hartman,* 797 F.Supp. 968, 973 (S.D.Fla.1992) (same); *see also Amoco Oil Co.,* 889 F.2d at 672 ("private plaintiffs may recover only those response costs that are necessary and consistent with the NCP."). In straight terms, the plaintiffs here have shown no relationship between any of their expenditures and the advancement of the statutory scheme. As presently constituted, these expenses, analogous to medical moni-

---

**6.** The National Contingency Plan, 40 C.F.R. 300 *et seq.* (1995), establishes procedures for coordination between federal and state cleanups, and private party cleanups. It attempts to ensure that all cleanups will accord with certain standards. Private parties' response actions must, "when evaluated as a whole, [be] in substantial compliance with the National Contingency Plan and result in a CERCLA-quality cleanup." § 300.700(c)(3)(i). In turn, the Plan sets forth a detailed procedure which private parties engaging in "response" must follow in order to recover their costs, including procedures regarding the following: evaluation of sites; investigatory procedures; selection of remedies; community notification.

toring costs, "smack[ ] of a cause of action for damages resulting from personal injury," *Price,* 39 F.3d at 1017, and seek only to protect the plaintiffs' private interests as landowners. As before: the plaintiffs may well be entitled to compensation for the invasion, or threatened invasion, of these rights; but CERCLA does not provide any.

That CERCLA response costs encompass only those expenses that directly advance the statute's goals is supported by the United States Supreme Court's recent decision in *Key Tronic Corp. v. United States,* —— U.S. ——, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). In *Key Tronic,* the Court held that attorney's fees could not constitute recoverable response costs under CERCLA. But the decision reaches beyond the parameters of statutory interpretation. More relevant than the result is the majority's reasoning. Such litigation-related costs, concluded the Court, did not "significantly benefit[ ] the entire cleanup effort," nor did they advance any statutory purpose. *Id.* at ——, 114 S.Ct. at 1967. The Court distinguished such costs—which further only private interests—from, for example, expenses a property-owner incurs in searching for potential polluters of his land. *Id.* The latter, held the Court, "increase the probability that a cleanup will be effective and get paid for," *id.;* this goal, of course, lies at the heart of the CERCLA scheme.

In the present case, the plaintiffs' claimed "investigation" and future "remediation" expenses fall within the category of unrecoverable litigation-related costs. As the Court has already observed, the plaintiffs produce nothing to suggest that any hazardous conditions remain; nor do they plead any facts tending to show their individual involvement in any cleanup effort. If the plaintiffs monitor the groundwater, they likely do so to discover if they have a claim at all rather than to determine the extent of, and remedy for, existing contamination. *See Rhodes,* 833 F.Supp. at 1185, 1189 (conclusory and unsubstantiated allegations of investigation and monitoring cannot support a CERCLA claim); *Ambrogi,* 750 F.Supp. at 1244 (same). Such expenses

cannot be said to further federal purposes except in the most attenuated manner.

The Court declines to transform CERCLA into a federal toxic tort statute which compensates private persons for every harm or threat that follows an acute chemical accident, such as the one experienced by the people of Bogalusa in October. The plaintiffs here may well have suffered, as a consequence of this accident, some very real invasion of their rights. But such rights—and those private parties not actively, and actually, engaged in cleaning up a hazardous site—must find their remedies through the state tort system.

Finally, the plaintiffs' contentions of jurisdiction based on future claims of contribution among the defendants cannot prevail. Although Section 113(f) of CERCLA does allow such claims among private parties who are responsible for the hazard, it presupposes the existence of a "civil action ... under section 9607(a)" of CERCLA. Such an action, as the Court has already observed, does not exist here.

Accordingly, the Court finds no basis for federal question jurisdiction,[7] and the originally-filed cases are DISMISSED.

### C. Removal Jurisdiction

The removing defendants have abandoned federal question jurisdiction as a basis for removal. Instead, they pose two other theories: first, that the supplemental jurisdiction statute, 28 U.S.C. § 1367, allows the removal of these cases even in the absence of any other basis for federal jurisdiction; and, second, invoking the All Writs Act, 28 U.S.C. § 1651, that exceptional circumstances exist to justify removal. The Court finds no merit in either of these arguments.

Supplemental jurisdiction grants federal district courts the power to hear state claims in a case properly before the federal court. Here, the defendants contend that the state court suits arise from the same incident as those originally filed in federal court. Thus, they argue, the Court may premise its exercise of removal jurisdiction on the existence of a federal question asserted in the original-

---

**7.** The plaintiffs have wisely abandoned any claims for relief under the Resource Conserva-

tion and Recovery Act (RCRA), 42 U.S.C. § 6901 *et seq.*

ly-filed suits. Even crediting such a dubious suggestion, however, the Court has already held that the original suits do not implicate a federal question. Thus, the defendants' contentions of supplemental jurisdiction must fail. The defendants' invocation of the All Writs Act similarly rests on the existence of federal question jurisdiction in the originally-filed cases; as such, it cannot constitute a basis for removal. The motion to remand the state court tort suits is therefore GRANTED.

### III.

■■■■■ Two other issues remain for the Court's consideration: the fate of the "citizen suit," No. 96–0100, *John Pat Golden v. Gaylord Chemical Corp., et al.;* and of the two declaratory judgment suits brought by Gaylord against its insurers. The citizen suit is brought under the "private attorney general" provisions of CERCLA and other federal statutes. *See* 42 U.S.C. § 9659(a). In contrast to the tort plaintiffs, this suit does not seek response costs of any kind; instead, the complaint states only that Gaylord has violated a federal environmental order or regulation. This allegation is enough for federal jurisdiction. *See Lutz v. Chromatex, Inc.,* 718 F.Supp. 413, 421 (M.D.Pa.1989). The insurance coverage disputes present somewhat more complicated questions. These two suits have been removed here from state court.[8] Gaylord Chemical and Gaylord Container, the plaintiffs in these cases, have requested remand if the Court finds, as it has, that the tort suits state no federal claim. The defendants in No. 95–4011 apparently acquiesce in this request. The insurance carrier in No. 95–4154, however, Illinois National Insurance Company, contends that diversity of citizenship exists and justifies removal on the basis of diversity jurisdiction, without regard to whether the pleading presents a federal question.

The citizenship of corporations, for purposes of diversity jurisdiction, is detailed in 28 U.S.C. § 1332(c)(1). That statute provides that a corporation is deemed to be a citizen of (1) any state by which it has been incorporated; and (2) the state in which it has its principal place of business. Section 1332(c)(1) also states, however, that an insurer in a direct action suit is deemed to have the same citizenship as its insured.

In the present case, the facts stated in defendant's notice of removal state that Gaylord Container and Gaylord Chemical are Delaware corporations with principal places of business in Louisiana; that co-plaintiffs Buddy Hall and Larry Mizell are Louisiana citizens; and that Illinois National Insurance, the only defendant, is an Illinois corporation. These facts are not contested. Thus, the defendant contends, diversity jurisdiction exists on the face of the pleading. Section 1332(c)(1), according to Illinois National, does not apply because this suit is between parties to an insurance contract and not a direct action suit.

The Court agrees that this case, a declaratory judgment suit by an insured against its insurer, is not one that falls within the statute. As a preliminary matter, the record reflects that the plaintiffs did not invoke the direct action statute, LA.REV.STAT. § 22:655. More importantly, however, the Fifth Circuit has held that the statute applies only to tort claims and not to contract disputes. *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992, 995 (5 Cir.1985). Thus, although the same insurance coverage dispute may well also be an issue in the state court litigation, the citizenship of Illinois National Insurance cannot be determined with reference to the citizenship of the Gaylord companies. On the face of the complaint, diversity of citizenship exists between the plaintiffs and the defendant. Accordingly, the Court DENIES remand of case no. 95–4154.

Considering the foregoing, the Court's order is as follows:

1. The citizen suit, No. 96–0100, *John Pat Golden v. Gaylord Chemical Corp., et al.,* is retained;

2. The declaratory judgment suit by Gaylord against Illinois National Insurance Co., No. 95–4154, *Gaylord Container Corp., et al. v. Illinois National Ins. Co.,* is retained;

---

**8.** These suits are designated as Nos. 95–4011 and 95–4154.

3. The tort suits originally filed in the Eastern District of Louisiana are DISMISSED for lack of subject-matter jurisdiction. This dismissal order applies to the following cases: Nos. 95–3474; 95–3488; 95–3490; 95–3492; 95–3522; 95–3572; 95–3576; 95–3591; 95–3593; 95–3595; 95–3645; 95–3666; 95–3673; 95–3705; 95–3790; 95–4015; and 95–4161;

4. The tort suits removed here from state court are REMANDED. The remand order applies to the following cases: Nos. 95–3892; 95–3893; 95–3894; 95–3895; 95–3896; 95–3897; 95–3898; 95–3899; 95–3900; 95–3901; 95–3902; 95–3903; 95–3904; 95–3905; 95–3906; 95–3907; 95–3908; 95–3909; 95–3910; 95–3911; 95–3912; 95–3913; 95–3914; 95–3915; 95–3916; 95–3917; 95–3918; 95–3919; 95–3920; 95–4099; 95–4100; 95–4101; 95–4102; 95–4102; 95–4102; 95–4103; 95–4105; 96–0028; 96–0029; 96–0030; 96–0031; 96–0032; 96–0388; 96–0389; 96–0390; 96–0391; 96–0911; 96–0912; 96–0913; 96–0914; and 96–0945;

5. The insurance coverage dispute, No. 95–4011, *Gaylord Container Corp., et al. v. CNA Insurance Co., et al.*, removed here from state court is REMANDED.