# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2894

_____

Von R. Trimble, Jr., on his own behalf    *
and on behalf of others similarly    *
situated; Douglas S. Campbell, on his    *
behalf and on behalf of others similarly    *
situated; Marci Campbell, on her own    *
behalf and on behalf of others    *
similarly situated,    *
   *
      Plaintiffs-Appellants.    *
   *
Jimmie Grosvenor, on his behalf and    *
on behalf of others similarly situated,    *
   *
      Plaintiff.    *
   *
Georgia Grosvenor, on her own behalf    *    Appeal from the United States
and on behalf of others similarly    *    District Court for the
situated; Matt Ferro, on his own behalf    *    District of Nebraska
and on behalf of others similarly    *
situated; John C. Pieper, on his own    *
behalf and on behalf of others similarly    *
situated; Sylvia Curtis,    *
   *
      Plaintiffs-Appellants.    *
   *
Ernest Deplanty,    *
   *
      Plaintiff.    *
   *
Darell Young,    *
   *

Plaintiff-Appellant.                          *

Asarco, Inc., a New Jersey                    *
Corporation,                                  *
                                              *
Defendant-Appellee.                           *

_____

Submitted:   March 15, 2000

Filed:   November 28, 2000
_____

Before McMILLIAN, FLOYD R. GIBSON[1] and MORRIS SHEPPARD ARNOLD,
      Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Plaintiffs, a putative class of over 30,000 current and future residents of a geographic area near a former lead smelter and refinery (hereinafter "the site" or "the Asarco site") located in Omaha, Nebraska, appeal from a final judgment entered in the United States District Court[2] for the District of Nebraska dismissing for lack of subject matter jurisdiction their third amended complaint against Asarco, Inc. (Asarco), the owner and former operator of the site. See Trimble v. Asarco, Inc., No. 8:97CV428 (D. Neb. May 20, 1999) (judgment). For reversal, plaintiffs argue that the district court erred in holding that it lacked federal question jurisdiction over plaintiffs' claim for recovery of response costs under the Comprehensive Environmental Response,

_____

[1]Judge Gibson was unable to review this opinion prior to its filing. The opinion is consistent with Judge Gibson's vote at conference.

[2]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., and that it lacked diversity jurisdiction over plaintiffs' remaining state law claims. See id. (May 20, 1999) (memorandum and order).

The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons stated below, we affirm.

## Background

On September 5, 1997, plaintiffs brought this class action against Asarco, pursuant to Fed. R. Civ. P. 23, alleging that their properties have been contaminated by pollutants from the Asarco site. On December 8, 1997, plaintiffs filed a second amended complaint, setting forth the CERCLA private cost-recovery claim, as well as state law claims for trespass, nuisance, negligence, strict liability, unjust enrichment, and medical monitoring. See Joint Appendix, Vol. I, at 19-52 (second amended complaint). The named plaintiffs purported to represent thousands of individuals who own or rent property in a specified area surrounding the site. See id. at 20-35. Plaintiffs asserted that the district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), and 1367 (supplemental jurisdiction). In its answer, Asarco admitted that, from time to time in the past, Asarco's smelting and refining operations at the site caused lead and other particulates to be emitted into the air. See Answer to Second Amended Complaint, ¶ 39 (filed Aug. 14, 1998).[3] Asarco maintained, however, that particulates emitted into

_____

[3]Asarco's answer to the second amended complaint states, in relevant part:

Defendant admits that from time to time byproducts of smelting (prior to the cessation of smelting operations), and byproducts of refining, including lead and other particulates, were emitted into the air from stacks and other sources at the Omaha plant. Defendant avers that a substantial volume of these air emissions were captured by emission control devices

-3-

the air from the site did not have adverse public health effects.  See id., ¶ 40.  Asarco also moved to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim, and, alternatively,  pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.

Focusing on Asarco's Rule 12(b)(1) motion, the district court held that it lacked subject matter jurisdiction over plaintiffs' CERCLA claim because plaintiffs failed to allege facts sufficient to show that they had incurred response costs consistent with the national contingency plan (NCP).  See slip op. at 2-7 (Dec. 14, 1998) (memorandum and order).  However, the district court granted plaintiffs leave to amend the complaint to address the deficiency.  See id. at 7-8.[4]

The district court further held that it lacked subject matter jurisdiction over plaintiffs' state law claims.  The district court reasoned that, for jurisdiction to be predicated upon 28 U.S.C. § 1332, plaintiffs were required to show that they each individually satisfied the $75,000 amount-in-controversy requirement.  See id. at 8-12.

---

or otherwise did not escape from the plant site.

Answer to Second Amended Complaint, ¶ 39 (filed Aug. 14, 1998).

[4]The district court explained:

> After review of the materials submitted in support of, and in opposition to, filing no. 62, "Defendant's Motion to Dismiss for Failure to State a Claim under CERCLA and for Lack of Subject Matter Jurisdiction," the court finds and concludes that the part of filing no. 62 in which ASARCO challenges the existence of subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) is sustained.  However, the plaintiffs will be given an opportunity to submit a Third Amended Complaint . . . .

Slip op. at 7 (Dec. 14, 1998) (memorandum and order).

The district court held that plaintiffs had not made such a showing, but again granted plaintiffs leave to do so in the third amended complaint. See id. at 12-13.[5]

Plaintiffs filed a third amended complaint on January 11, 1999. On January 26, 1999, Asarco renewed its motion to dismiss for lack of subject matter jurisdiction. Asarco argued in its renewed motion to dismiss that subject matter jurisdiction could not be based upon 28 U.S.C. § 1331 because plaintiffs had failed to allege essential elements of their private cause of action under CERCLA. See slip op. at 4 (May 20, 1999). In particular, Asarco argued that plaintiffs could not establish the third element of their cause of action under 42 U.S.C. § 9607(a)(4)(B), that they had incurred necessary response costs.[6] See id. at 6. The district court characterized Asarco's motion as "a 'factual attack' on subject matter jurisdiction." Id. at 2. The district court thus reasoned that factual findings related to the third element of plaintiffs' CERCLA claim were "findings of jurisdictional fact," which the district court could decide according to the preponderance of evidence standard and which this court would review solely for clear error. See id. at 3 & n.1(citing Osborne v. United States, 918 F.2d 724, 728-31 (8th Cir. 1990) (Osborne) (reversing dismissal for lack of subject matter jurisdiction which was predicated upon jurisdictional statute of limitations defense)). The district court then noted: "It is clear from the record that the plaintiffs

_____

[5]The district court stated: "If, in the Third Amended Complaint, subject matter jurisdiction is asserted pursuant to 28 U.S.S.C. § 1332, the court emphasizes that each plaintiff in a diversity-based class action must meet the jurisdictional amount under 28 U.S.C. § 1332."

[6]To establish a prima facie case of liability under CERCLA, plaintiffs have the burden to show, consistent with the language and meaning of 42 U.S.C. § 9607(a), that: (1) the site is a facility, (2) a release or threatened release of a hazardous substance from the site has occurred, (3) the release or threatened release has caused plaintiffs to incur response costs, and (4) Asarco falls within one of four categories of responsible persons under 42 U.S.C. § 9607(a). See, e.g., United States v. Aceto Agric. Chems. Corp., 872 F.2d 1373, 1378-79 (8th Cir. 1989).

in this action, both the putative class members and the class representatives, have not personally spent any money whatsoever for investigation or remediation." See id. at 6-7 (footnote omitted). The district court explained that only plaintiffs' attorneys, not plaintiffs themselves, had paid for the "brief sampling" of soil near the site, and, moreover, plaintiffs would not be liable for reimbursement of the attorneys' expenditures unless they were ultimately successful in the litigation. See id. at 7-8. The district court thus concluded:

> [W]hether the plaintiffs have "incurred" "necessary costs of response" within the meaning of 42 U.S.C. § 9607(a)(4)(B) of CERCLA, presents a mixed question of fact and law. The court finds and concludes that the plaintiffs have "incurred" no liability and no costs; that the plaintiffs have, therefore, failed to allege an essential element of a private cause of action under CERCLA; and that subject matter jurisdiction of this action cannot be predicated on 28 U.S.C. § 1331.

Id. at 12.

Regarding diversity jurisdiction – in particular, the $75,000 amount-in-controversy requirement – the district court opined that, under Nebraska law, an award for property damage would be limited by the Nebraska Supreme Court to the fair market value of the property immediately preceding the damage. See id. at 13-15. The district court explained:

> This court believes, and, therefore, predicts that the Nebraska Supreme Court, if faced with the issue today, would adopt the rule set forth in Kietges[ v. VanDermeulen, 483 N.W.2d 137, 143 (Neb. 1992),] and "L" Investments[, Ltd. v. Lynch, 322 N.W.2d 651, 656 (Neb. 1982)], limiting the recoverable costs of restoration or remediation to the market value of the property.

Id. at 14-15. The district court then determined that the cost to remediate plaintiffs' properties, limited by their market values, plus any damages arising from incidental

burdens associated with such remediation, could not meet the $75,000 jurisdictional amount-in-controversy requirement for each plaintiff. See id. at 12-15 & n.4.

Finally, the district court rejected plaintiffs' argument that they were entitled to damages for the costs of future medical monitoring and could thereby satisfy the $75,000 amount-in-controversy requirement under 28 U.S.C. § 1332. See id. at 15-17 & n.5. Because the CERCLA claim had been dismissed, the only possible basis for plaintiffs' medical monitoring claim was state law. The district court then reasoned:

> [T]he plaintiffs have cited no authority, and the court has found none, which would suggest that Nebraska law recognizes either a cause of action for medical monitoring or a remedy involving the creation of a medical monitoring fund. There exists no pending or prospective legislation to authorize a cause of action or a remedy for medical monitoring, and the court finds it improbable that the Nebraska courts would judicially fashion such a right or remedy.

Id. at 16.

Thus, the district court granted Asarco's motion to dismiss the third amended complaint for lack of subject matter jurisdiction, and judgment was entered for Asarco. See id. (May 20, 1999) (judgment). Plaintiffs timely appealed.

**Discussion**

Dismissal for lack of subject matter jurisdiction under 28 U.S.C. § 1331

We address, as a threshold matter, the district court's reliance on lack of subject matter jurisdiction as its basis for dismissing plaintiffs' CERCLA claim. As noted above, Asarco originally moved to dismiss the second amended complaint on grounds of both lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to

state a claim under Fed. R. Civ. P. 12(b)(6). In its order dated December 14, 1998, however, the district court discussed the motion solely in terms of subject matter jurisdiction. Consequently, after plaintiffs filed their third amended complaint, Asarco asserted only lack of subject matter jurisdiction as the basis for its renewed motion to dismiss.

Asarco argues that the district court's dismissal for lack of subject matter jurisdiction was consistent with the rule of Bell v. Hood, 327 U.S. 678 (1946), because there can be no subject matter jurisdiction under 28 U.S.C. § 1331 if a substantial federal question has not been presented. Asarco further maintains that federal courts "routinely" treat these issues as matters under Rule 12(b)(1) (lack of subject matter jurisdiction), as well as Rule 12(b)(6) (failure to state a claim). As an example, Asarco cites Holloway v. Gaylord Chemical, 922 F. Supp. 1154, 1156-60 (E.D. La. 1996) (Holloway) (dismissing CERCLA claims for lack of subject matter jurisdiction because the plaintiffs had failed to allege costs satisfying the statutory meaning of necessary response costs).[7]

In Bell v. Hood, the Supreme Court explained:

> Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not

---

[7]These arguments were made by Asarco in response to questions posed by this court at oral argument.

-8-

for want of jurisdiction. The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

327 U.S. at 682-83 (footnote and citations omitted).

Consistent with Bell v. Hood, a motion to dismiss a federal claim, if predicated on failure to establish an essential element of the cause of action, should generally be analyzed under Fed. R. Civ. P. 12(b)(6), unless it can be shown that the challenged claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Id. at 683. "[O]nly the most extreme cases will fail the jurisdictional test of substantiality." LaSalle Nat'l Trust v. ECM Motor Co., 76 F.3d 140, 143 (7th Cir. 1996) (LaSalle National Trust) (where district court dismissed CERCLA claim for lack of subject matter jurisdiction, reversing and remanding for further proceedings because the plaintiffs had not alleged CERCLA claims that were so implausible, patently without merit, or insubstantial that they failed for jurisdictional purposes). Only in such rare instances is dismissal for lack of subject matter jurisdiction appropriate. The question, then, is whether this is one of those rare instances.

As noted above, Asarco relies on Holloway, a decision from the District Court for the Eastern District of Louisiana, as support for the district court's dismissal of plaintiffs' CERCLA claim in the present case. In Holloway, the district court dismissed CERCLA claims after concluding that the element of response costs had not been adequately pled. At first glance, Holloway does appear to deviate from the general rule that motions to dismiss federal claims, where based upon the plaintiff's failure to establish an essential element, should be analyzed under Fed. R. Civ. P. 12(b)(6). However, that apparent deviation can be explained by the unusual way in which subject matter jurisdiction was addressed by the district court in Holloway. In that case, the

district court was faced with dozens of consolidated cases arising out of a single accident in the City of Bogalusa, Louisiana, in which a cloud of nitrogen tetroxide gas escaped from a tank car on private property and caused several sections of the city to be evacuated. Some of the consolidated cases had originally been filed in the district court, while others had been removed from state court by the defendants. Both the original plaintiffs and the removing defendants asserted federal subject matter jurisdiction on the ground that the complaints were seeking, among other things, response costs under CERCLA. See 922 F. Supp. at 1156. Although none of the defendants moved to dismiss for failure to state a viable CERCLA claim, the district court recognized the potential legal inadequacy of the plaintiffs' response costs allegations and *sua sponte* ordered the parties to brief that element. Upon concluding that the plaintiffs had not adequately pled response costs as a matter of law, the district court invoked its powers under Fed. R. Civ. P. 12(h)(3)[8] and dismissed the consolidated cases. See id. at 1157-60. Thus, aside from the fact that Holloway carries no authoritative weight in this circuit, Holloway is distinguishable from the present case because none of the defendants in Holloway moved to dismiss, and the district court was compelled to resort to its broad powers under Fed. R. Civ. P. 12(h)(3) to dismiss the litigation *sua sponte* for lack of subject matter jurisdiction.

In our opinion, LaSalle National Trust is more instructive. In that case, the Seventh Circuit very aptly explained *why* it is important to distinguish dismissals under Fed. R. Civ. P. 12(b)(1) from dismissals under Fed. R. Civ. P. 12(b)(6).

> [I]t is obviously possible that a plaintiff may successfully invoke federal jurisdiction, for purposes of 28 U.S.C. § 1331, and yet may lose on some other ground, such as a failure to state a claim on which relief can be granted or failure to prove the merits after a full trial. A plaintiff's

_____

[8]Rule 12(h)(3) of the Federal Rules of Civil Procedures provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

claim may appear to be sufficient on its face, but a defendant may have a compelling affirmative defense. In some cases, the distinction between a claim that is wholly frivolous for jurisdictional purposes and a claim that is doomed on the merits may seem medieval in its fineness, and may be of little practical importance. Nonetheless, the distinction is one that the Supreme Court has always recognized, and it rests on both sound policy grounds as well as practical considerations. From a policy standpoint, it underscores the importance of giving a full hearing to those who are attempting to raise claims in federal court, even if those claims are eventually unsuccessful. From the more pragmatic side, the way in which the facts are handled under Fed. R. Civ. P. 12(b)(1) differs significantly from the correct approach for purposes of Rule 12(b)(6), and the Rule 12 procedures differ again from those used for Rule 56.

76 F.3d at 143-44 (citing Bell v. Hood, 327 U.S. 678 (1946)).

We agree with the Seventh Circuit that making the distinction between a claim that is "wholly frivolous for jurisdictional purposes" and one that is "doomed on the merits" is neither merely academic nor unnecessary. The distinction is based on longstanding policy and practical considerations which are not trivial and cannot be overlooked. In the present case, plaintiffs' CERCLA claim does not clearly appear to be immaterial and made solely for the purpose of obtaining jurisdiction, nor is it wholly insubstantial and frivolous. Thus, the district court should not have dismissed the claim under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. The district court should instead have analyzed Asarco's motion to dismiss under Fed. R. Civ. P. 12(b)(6).[9] See, e.g., Godfrey v. Pulitzer Publ'g Co., 161 F.3d 1137, 1142 (8th Cir.

---

[9]By contrast, if the issue before the district court had been whether the plaintiff has failed to satisfy a threshold *jurisdictional* requirement, the Rule 12(b)(1) approach would have been appropriately applied. See, e g., Missouri v. Western Sur. Co., 51 F.3d 170, 173 (8th Cir. 1995) (applying Rule 12(b)(1) analysis to jurisdictional amount-in-controversy requirement: if the amount alleged is questioned by the defendant or the court, the plaintiff must prove the requisite amount by a preponderance of the evidence and, if the court is satisfied to a legal certainty that the requirement has not been met,

1998) (reversing and remanding for erroneous jurisdictional analysis where the district court granted the defendant's Fed. R. Civ. P. 12(b)(1) motion, which essentially challenged an element of the plaintiffs' cause of action under the Robinson-Patman Act; holding the district court should instead have treated the issue as a matter under Fed. R. Civ. P. 12(b)(6)), cert. denied, 119 S. Ct. 1575 (1999).

In LaSalle National Trust, the Seventh Circuit also explained *how* these dispositive motions are to be treated differently:

> It is plain that the factual posture of these kinds of pretrial dispositive motions can be critical. In the 12(b)(1) case, the district court is entitled to find jurisdictional facts itself; in the 12(b)(6) case, the court is required to keep the case if there is any set of facts under which the plaintiff might prevail; and for Rule 56, all disputed material facts must be viewed in the light most favorable to the party opposing the motion, although that party has the burden under Celotex Corp. v. Catrett, 477 U.S. 317 (1986), to come forward with evidence showing the genuineness of any factual disputes that it asserts must be tried.

76 F.3d at 144 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Conversion to summary judgment matter

In the present case, matters outside the pleadings related to response costs were presented to, and not excluded by, the district court. Accordingly, Asarco's motion to dismiss not only should have been treated initially as a motion under Fed. R. Civ. P.

---

the court may dismiss for lack of jurisdiction) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)); Osborne v. United States, 918 F.2d 724, 728-30 (8th Cir. 1990) (noting that compliance with the statute of limitations is a jurisdictional prerequisite to suit under the Federal Torts Claims Act and applying Rule 12(b)(1) standards to plaintiff's burden to prove the jurisdictional requirement).

12(b)(6), but also should have been converted to a summary judgment matter under Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b).[10] Even though the district court did not follow the correct procedural path, the district court nevertheless provided the parties with a full opportunity to present all pertinent materials outside the pleadings regarding the issue of response costs, and the parties created a complete record on the issue. We therefore may now proceed to the summary judgment question, even though the district court did not. See, e.g., United States v. Sager, 743 F.2d 1261, 1265-66 (8th Cir. 1984) ("We could of course remand to the District Court for it to determine this question in the first instance, but the record is complete, and the issue has been fully briefed, and we see no reason for such a circuitous procedure."), cert. denied, 469 U.S. 1217 (1985).

The question now before us is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). In the present case, we may affirm the district court's dismissal of plaintiffs' CERCLA claim (albeit through a different procedural analysis) if viewing the record in the light most favorable to plaintiffs shows that there is no genuine issue as to any material fact and Asarco is entitled to judgment as a matter of law. See Phillips v. The Marist Society, 80 F.3d

---

[10]Rule 12(b) of the Federal Rules of Civil Procedure provides in relevant part:

> If, on a motion asserting the defense numbered [12(b)](6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the [district] court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

274, 275 (8th Cir. 1996) ("It is well settled . . . that a court of appeals may affirm on any ground supported by the record, whether or not that ground was addressed by the District Court.").  Where the unresolved issues are primarily legal rather than factual, disposition on summary judgment is particularly appropriate.  See Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

Response costs as an element of plaintiffs' CERCLA claim

Plaintiffs must establish the following elements in order to prove their CERCLA private cost-recovery claim under 42 U.S.C. § 9607(a): (1) the site is a facility, (2) there has been a release or threatened release of a hazardous substance from the site, (3) the release or threatened release has caused plaintiffs to incur necessary response costs, and (4) Asarco falls within one of four categories of responsible persons under CERCLA. See, e.g., United States v. Aceto Agric. Chems. Corp., 872 F.2d 1373, 1378-79 (8th Cir. 1989).[11] The district court concluded that plaintiffs' claim fails as a matter of law on the third element because they cannot show that they have "incurred" "necessary costs of response," as required under 42 U.S.C. § 9607(a)(4)(B). See slip op. at 12 (May 20, 1999). As stated above, the district court reasoned that none of the plaintiffs had personally spent any money investigating or remediating contamination on his or her property and, even assuming the expenditures paid by plaintiffs' attorneys qualify as response costs within the meaning of CERCLA, plaintiffs had not "incurred" such costs merely because they may be obligated in the future to reimburse their attorneys if the litigation ends successfully. In the present appeal, plaintiffs argue that their contingent liability to their attorneys for reimbursement of response costs *is* legally sufficient to establish that they, themselves, have "incurred" response costs within the meaning of the statute.

We assume, for the sake of argument, that some investigation and remediation has taken place to address soil contamination caused by Asarco.[12] We also assume,

_____

[11]The elements of a CERCLA private cost-recovery claim are sometimes ordered or stated differently, but the contents are substantively the same. See, e.g., Johnson v. James Langley Operating Co., 226 F.3d 957, 961-62 (8th Cir. 2000).

[12]Plaintiffs maintain that "more than $168,000 has been expended on investigating the extent of Asarco's contamination and in planning remediation made necessary by Asarco's conduct." Brief for Appellants at 21.

without deciding, that some of those expenditures are, by their nature, "necessary costs of response" under CERCLA.  See Key Tronic Corp. v. United States, 511 U.S. 809, 816-21 (1994) (interpreting "necessary costs of response"); Johnson v. James Langley Operating Co., 226 F.3d 957, 962-64 (8th Cir. 2000) (same).

It is not genuinely disputed that plaintiffs' attorneys, not plaintiffs themselves, paid those expenditures and, moreover, that  plaintiffs will be obligated to reimburse their attorneys for such expenditures only if plaintiffs ultimately prevail in this litigation. In other words, if, in the end,  plaintiffs are unsuccessful, then they will have made no out-of-pocket payments for response costs and will have no legal obligation to do so.

The district court determined that the mere possibility that plaintiffs will be obligated in the future to pay for response costs is insufficient as a matter of law to satisfy the response costs element of their CERCLA claim.  That determination is a matter of statutory interpretation, which we now review *de novo*.  See Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 91 (2d Cir. 2000) (per curiam) (Gussack Realty) ("We review the district court's statutory interpretation as to the compensability of various response costs *de novo*.").

Plaintiffs argue that the district court erred because this court "has explicitly held that a party can 'incur' expenses even if he or she does not actually pay for them."  Brief for Appellants at 19 (citing Farmland Indus., Inc. v. Frazier-Parrott Commodities, 111 F.3d 588, 591 (8th Cir. 1997) (Farmland Industries)).   In Farmland Industries, a commodities broker successfully defended a lawsuit brought in federal court by one of its customers and thereafter sought an award of attorneys' fees under a provision in the brokerage contract.  This court held that the broker had "incurred" the attorneys' fees within the meaning of the brokerage contract, even though the broker's parent company had actually paid the attorneys' fees, because the attorneys represented the broker and the broker was liable for the fees.  See Farmland Industries, 111 F.3d at 591. Plaintiffs also cite Quarles Petroleum Co. v. United States, 551 F.2d 1201 (Ct. Cl. 1977)

(<u>Quarles</u>), for the proposition that one can "incur" expenses without actually paying for them. In <u>Quarles</u>, the Court of Claims held that the plaintiffs could recover environmental clean-up costs under the Federal Water Pollution Control Act (FWPCA) even though their insurer had actually paid the costs. Plaintiffs' quote <u>Quarles</u> for its statement: "To incur means to become liable for or subject to; it does not mean to actually pay for." <u>See</u> Brief for Appellants at 20 (quoting <u>Quarles</u>, 551 F.2d at 1205 (footnote omitted)). Plaintiffs further argue: "[c]ase law interpreting the FWPCA is relevant because CERCLA defines the NCP by referring to the NCP mandated by the FWPCA." <u>Id.</u> (quoting <u>United States v. Northeastern Pharm. & Chem. Co.</u>, 810 F.2d 726, 748 (8th Cir. 1986), <u>cert. denied</u>, 484 U.S. 848 (1987)). Plaintiffs thus conclude that the district court erroneously believed that "incur" means "actually pay for," in mistaken reliance upon <u>In re Dant & Russell, Inc.</u>, 951 F.2d 246, 249-50 (9th Cir. 1991) (<u>Dant & Russell</u>), which concerned a monetary award under CERCLA to pay for the costs of *future* work.[13] <u>See</u> <u>id.</u> at 21. By contrast, plaintiffs argue, they are seeking to recover the costs of work that has already been done.

The cases upon which plaintiffs rely do not support the statutory interpretation they urge. First, none of the cases cited actually interprets the pertinent statutory provision, 42 U.S.C. § 9607(a)(4)(B). Second, and more importantly, they are distinguishable from the present case on their material facts. As stated above, plaintiffs have no existing obligation to reimburse their attorneys for the response costs allegedly

---

[13]In <u>In re Dant & Russell, Inc.</u>, 951 F.2d 246, 249-50 (9th Cir. 1991) (<u>Dant & Russell</u>), a case arising in bankruptcy, the Ninth Circuit reversed the bankruptcy court's award of funds from the debtor's estate to the extent that the claimant in question was seeking reimbursement for *future* response costs under CERCLA, 42 U.S.C. § 9607(a)(4)(B). The Ninth Circuit explained: "This case provides no occasion for defining what 'incurred' means--only what it does not mean. Here, we are presented with nothing but bare assertions by [the claimant] that [the claimant] will perform future cleanup. These assertions do not amount to response costs 'incurred' under § 9607(a)(4)(B)." <u>Dant & Russell</u>, 951 F.2d at 250.

incurred. No such obligation will arise unless and until plaintiffs obtain a final judgment against Asarco, and then only to the extent of that judgment. By contrast, in Farmland Industries, the defendant brokerage firm was obligated to pay the attorneys' fees in question regardless of whether those fees could be recovered from the plaintiff through litigation. See 111 F.3d at 591. In Quarles, the plaintiffs themselves had hired the environmental clean up companies and, moreover, the plaintiffs were at all relevant times liable to pay those entities for their services, even though the plaintiffs' insurer made the out-of-pocket payments. See 551 F.2d at 1205. Indeed, immediately following the language quoted by plaintiffs,[14] the Quarles opinion provides:

> The facts in the instant case clearly demonstrate that the plaintiffs through their own actions were liable for the costs resulting from the clean up operations. It was the plaintiffs' general manager who negotiated assistance in cleaning up the spilled oil. As a result, the plaintiffs were liable to pay the persons and companies which had provided the goods and services in removing the spilled oil. The fact that the plaintiffs were insured and that the plaintiffs' insurer paid out the total cost of the clean up operations is immaterial under [33 U.S.C.] § 1321.

Id.

We do not dispute plaintiffs' point that a party may be found to have "incurred" a cost without having actually paid for it. As recognized in Farmland Industries and Quarles, a finding that a cost has been "incurred" may be based upon an existing legal obligation. However, the mere possibility, even the certainty, that an obligation to pay will arise in the future does not establish that a cost has been incurred, but rather establishes that a cost may be incurred, or will be incurred. Thus, Dant & Russell *is* instructive, as the district court recognized. In Dant & Russell, 951 F.2d at 249, the

---

[14]"To incur means to become liable for or subject to; it does not mean to actually pay for." Quarles Petroleum Co. v. United States, 551 F.2d 1201, 1205 (Ct. Cl. 1977) (footnote omitted).

Ninth Circuit observed: "Under CERCLA's scheme for private action, response costs may not be recovered when there has been no commitment of resources for meeting these costs. Section 9607(a)(4)(B) permits an action for response costs 'incurred'--not 'to be incurred.'" Accord Gussack Realty, 224 F.3d at 92 (reversing award for future costs of cleaning up property because future response costs are not compensable under CERCLA). We therefore hold, upon *de novo* review, that plaintiffs have failed as a matter of law to assert a legally viable private cost-recovery claim under CERCLA, 42 U.S.C. § 9607(a).[15]

Plaintiffs also point out that their CERCLA claim contains a request for declaratory judgment pursuant to 42 U.S.C. § 9613(g)(2). See Joint Appendix, Vol. I, at 172 (Third Amended Complaint, Seventh Cause of Action, ¶ 95). Section 9613(g)(2) expressly provides that, in an action brought under § 9607, declaratory judgment may be granted to establish liability for future response costs. See 42 U.S.C. § 9613(g)(2) ("In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."). However, a plaintiff cannot obtain declaratory relief pursuant to § 9613(g)(2) without having incurred response costs within the meaning of § 9607(a)(4)(B). See Dant & Russell, 951 F.2d at 249-50 ("These sections [§§ 9607 and 9613] envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard. They can then go to court and obtain reimbursement for their initial outlays as

---

[15]Plaintiffs make the policy argument that a rule requiring a plaintiff to actually spend money or incur debt before having a CERCLA private cost-recovery claim will, in effect, deny those with the least financial resources access to CERCLA's benefits. While we recognize a potential for inequality within the CERCLA private cost-recovery scheme, we believe our holding today interprets the statute correctly and also promotes prompt and efficient responses to environmental hazards. Morever, no one is entirely excluded from CERCLA's benefits because state and federal environmental agencies are also empowered to carry out its statutory goals.

well as a declaration that the responsible party will have continuing liability for the cost of finishing the job."); cf. Gopher Oil Co. v. Bunker, 84 F.3d 1047, 1051 (8th Cir. 1996) (reversing the district court's dismissal of the plaintiff's CERCLA claim where, just prior to the appeal, the EPA had initiated a cost-recovery action which ripened the plaintiff's request for a declaration of the prior owners' liability to the extent of the plaintiff's liability to the EPA; however, recognizing that the district court may not have had subject matter jurisdiction at the time of its hearing because, at that time, the plaintiff "had not itself incurred response costs and the government had not yet brought a cost-recovery action" against the plaintiff). In sum, plaintiffs have no legally viable claim against Asarco at this time under either § 9607(a) or § 9613(g)(2).

We hold that the district court did not err in dismissing plaintiffs' CERCLA claim.

Dismissal for lack of diversity jurisdiction under 28 U.S.C. § 1332

As stated above, the district court dismissed plaintiffs' state law claims pursuant to Fed. R. Civ. P. 12(b)(1), holding that subject matter jurisdiction could not be predicated upon 28 U.S.C. § 1332 where no members of the plaintiff class could meet the $75,000 amount-in-controversy requirement. On appeal, plaintiffs argue that the district court erroneously held that: (1) supplemental jurisdiction could not be exercised pursuant to 28 U.S.C. § 1367 for members of the plaintiff class who could not satisfy the $75,000 requirement; (2) Nebraska does not recognize common law liability for medical monitoring and, even if it did, plaintiffs' individual claims could not be aggregated to satisfy the $75,000 requirement; (3) plaintiffs' recoveries for restoring their properties would be limited under Nebraska law to the properties' market values;

and (4) none of the individual members of the plaintiff class could meet the $75,000 requirement on their cognizable claims under applicable state law.[16]

Whether or not plaintiffs satisfy the $75,000 amount-in-controversy requirement under 28 U.S.C. § 1332 is a jurisdictional issue. "Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide." Osborne, 918 F.2d at 729. "[W]hen a federal complaint alleges a sufficient amount in controversy to establish

---

[16]Plaintiffs brought their common law claims under both Nebraska law and Iowa law because there are members of the plaintiff class residing in each state. We hold that only Nebraska law applies. See International Paper Co. v. Ouellette, 479 U.S. 481, 493-500 (1987) (Ouellette) (holding that landowners' common law nuisance claim against operator of out-of-state paper mill was governed by law of source state in light of Clean Water Act's comprehensive regulatory system which applied to paper mill). In Ouellette, the Supreme Court reasoned:

> Application of an affected State's law to an out-of-state source . . . would undermine the important goals of efficiency and predictability in the permit system.
>
> . . . .
>
> The CWA carefully defines the role of both the source and affected States, and specifically provides for a process whereby their interests will be considered and balanced by the source State and the EPA. This delineation of authority represents Congress' considered judgment as to the best method of serving the public interest and reconciling the often competing concerns of those affected by the pollution. It would be extraordinary for Congress, after devising an elaborate permit system that sets clear standards, to tolerate common-law suits that have the potential to undermine this regulatory structure.

Id. at 496-97. Consequently, punitive damages are not available to plaintiffs. See Enron Corp. v. Lawyers Title Ins. Corp., 940 F.2d 307, 312-13 (8th Cir. 1991) (interpreting Nebraska law as disallowing punitive damages).

diversity jurisdiction, but the opposing party or the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." Missouri v. Western Sur. Co., 51 F.3d 170, 173 (8th Cir. 1995). The complaint will be dismissed if it appears "to a legal certainty" that the value of the claim is actually less than the required amount. See Larkin v. Brown, 41 F.3d 387, 388 (8th Cir. 1994). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." Osborne, 918 F.2d at 730. If the district court dismisses for lack of subject matter jurisdiction based upon the complaint alone, or the complaint supplemented by undisputed facts evidenced in the record, "the appellate court's review is 'limited to determining whether the district court's application of the law is correct and, if the decision is based on undisputed facts, whether those facts are indeed undisputed.'" Id. If, however, the district court makes findings of disputed jurisdictional facts, "the appellate court must then review those findings under the 'clearly erroneous' standard." Id. Interpretations of state law are reviewed on appeal *de novo*. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

We first address plaintiffs' challenge to the district court's interpretation of the applicable federal jurisdictional statutes, upon which the district court concluded that each and every member of the plaintiff class must satisfy the $75,000 amount-in-controversy requirement in order to remain in the litigation. In 1969, the United States Supreme Court held in Snyder v. Harris, 394 U.S. 332, 336 (1969), that, in a diversity-based class action suit, individual class members' separate and distinct claims could not be aggregated to satisfy the $75,000 amount-in-controversy requirement under 28 U.S.C. § 1332. In 1973, the Supreme Court held in Zahn v. International Paper Co., 414 U.S. 291, 301 (1973) (Zahn), that, in a diversity-based class action suit brought pursuant to Fed. R. Civ. P. 23(b)(3), *each* member of the class must satisfy the amount-in-controversy requirement or must be dismissed from the case. In other words, under Zahn, a district court cannot exercise supplemental jurisdiction over claims of class

members who do not, themselves, satisfy the jurisdictional requirement. Repeating the words of the lower court, the Supreme Court observed: "'[O]ne plaintiff may not ride in on another's coattails.'" Id.

In the present case, the individual members of the plaintiff class are asserting separate and distinct claims related to their properties, and thus, under Snyder, their claims cannot be aggregated to satisfy the $75,000 amount-in-controversy requirement. See, e.g., Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296-97 (2d Cir. 2000) (Mehlenbacher) (citing Snyder and holding that, in property owners' diversity-based class action suit against owner of collapsed salt mine, class members could not aggregate claims based on damage to properties and economic losses in order to meet amount-in-controversy requirement). Moreover, if Zahn applies, then each and every member of the plaintiff class must meet the $75,000 threshold in order to remain in federal court. If Zahn does not apply, and supplemental jurisdiction may be exercised, then plaintiffs need only show that at least one member of the class meets the $75,000 jurisdictional requirement.

Plaintiffs argue that Congress overruled Zahn by its 1990 enactment of 28 U.S.C. § 1367. Subsection (a) of that provision states the following general rule:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Notably, the statute goes on to enumerate several specific exceptions to the general rule – of which class action suits under Fed. R. Civ. P. 23 is not one. Subsection (b) provides:

> (b) In any civil action of which the district courts have original jurisdiction founded solely on [28 U.S.C. § 1332], the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).

A few federal courts of appeals have considered § 1367's impact on Zahn, and they have reached divided conclusions. Compare Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 930 (7th Cir. 1996) (holding that § 1367 overrules Zahn); Free v. Abbott Labs. (In re Abbott Labs.), 51 F.3d 524, 528 (5th Cir. 1995) (Free v. Abbott Labs.) (same), aff'd by an equally divided court, 529 U.S. 333 (2000) (per curiam), with Leonhardt v. Western Sugar Co., 160 F.3d 631 (10th Cir. 1998) (Leonhardt) (holding that § 1367 does not overrule Zahn). As the Second Circuit noted in Mehlenbacher, 216 F.3d at 297 & n.10, the Supreme Court failed to resolve the circuit split when it affirmed the Fifth Circuit's decision in Free v. Abbott Labs. by an equally divided court.[17] See 529 U.S. 333 (2000) (per curiam).

---

[17]While acknowledging the complexity of this issue, the Second Circuit found it unnecessary to take a stance under the circumstances of the case before it. See Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 297-98 (2d Cir. 2000); see also Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1274-75 (11th Cir. 2000) (remanding to the district court for determination as to whether any member of the plaintiff class satisfied the $75,000 amount-in-controversy requirement and instructing the district

The Eighth Circuit has yet to address the question of whether § 1367overrules Zahn.  In the present case, plaintiffs urge us to follow the Fifth and Seventh Circuits and hold that, if the district court has original diversity jurisdiction under 28 U.S.C. § 1332 over the state law claims of any member of the plaintiff class (in this case, arguably the class representatives), then the district court has supplemental jurisdiction under 28 U.S.C. § 1367 over all remaining members of the plaintiff class, even if they themselves do not have $75,000 claims.  In reaching such a conclusion, the Fifth and Seventh Circuits focused on the absence of any reference to Fed. R. Civ. P. 23 (class actions) in 28 U.S.C. § 1367(b)'s list of exceptions.

Upon careful *de novo* consideration, however, we agree with the district court that the Tenth Circuit's decision in Leonhardt states the better view.  The Tenth Circuit reasoned as follows.

> [U]nder the historical interpretation of § 1332, any plaintiff in a diversity class action--whether class representative or putative class member--who does not meet the jurisdictional amount in controversy must be dismissed from the action, and if no plaintiff can meet the amount in controversy, the entire class action must be dismissed.  At issue here is whether the enactment of 28 U.S.C. § 1367, concerning supplemental jurisdiction, altered the historical aggregation rules under § 1332 for class actions.
>
> . . . .
>
> If the statutory language is clear and unambiguous, we normally find that language conclusive.  If the language is ambiguous, however, we may "resort to legislative history as an aid to interpretation."
>
> . . . .

court that, if any class member met the jurisdictional requirement, then the district court should address, in the first instance, the argument that § 1367 overrules Zahn).

-25-

In determining that nothing in the language of § 1367 limited the broad grant of authority conferred by § 1367(a) so as to preserve the historical aggregation rules for class actions under § 1332, the Fifth and Seventh Circuits focused only on the absence of Rule 23 from the exceptions enumerated in § 1367(b). Those exceptions, however, concern only the exercise of supplemental jurisdiction over claims against defendants who are made parties to a diversity action under certain rules and claims by plaintiffs who seek to be added to an on-going diversity action. We are concerned, however, with whether Congress intended to change the rules about when a plaintiff can bring an initial diversity-based class action under Rule 23, where the court's original jurisdiction is based upon § 1332. The omission of Rule 23 from § 1367(b) has no bearing on that question.

In our view, a literal and textually faithful reading of § 1367(a) leads to the opposite conclusion from that of the Fifth and Seventh Circuits. Section 1367(a) specifically addressed "any civil action of which the district courts have original jurisdiction." (Emphasis added.) It then provides for supplemental jurisdiction over transactionally related claims. Section 1332 is what confers original jurisdiction over diversity cases and it expressly requires that the "matter in controversy exceed[] the sum or value of $75,000." While § 1332 does not expressly refer to class actions, the Supreme Court has noted that periodic congressional amendment of the diversity statute to alter only the amount in controversy evidences congressional agreement with the Court's holding that "matter in controversy" does "not encompass[] the aggregation of separate and distinct claims." Thus, Congress in § 1367(a) expressly excepted claims brought under § 1332 and its well-understood definition of "matter in controversy."

Furthermore, § 1367(b) itself supports this interpretation of § 1367(a). Section 1367(b) sets forth various situations in which a court, sitting in diversity, cannot exercise supplemental jurisdiction where the exercise of such jurisdiction "would be inconsistent with the jurisdictional requirements of § 1332." That very language evidences a concern for preserving the historical and well-established rules of diversity. The fact that § 1367(b) prohibits the addition of claims and parties which would

-26-

destroy diversity supports our interpretation of § 1367(a) as also fully respecting the rules of diversity in cases invoking the original jurisdiction of the federal courts.

Thus, in our view § 1367(a) and (b) can be read literally, and unambiguously, to require each plaintiff in a class action diversity case to satisfy the Zahn definition of "matter in controversy" and to individually meet the $75,000 requirement.

160 F.3d at 637-40 (footnotes and citations omitted). Recognizing the statute's *arguable* ambiguity, the Tenth Circuit went on to consider the legislative background of 28 U.S.C. § 1367 and concluded that the legislative history further supports the view that Zahn remains good law. See id. at 640-41.

We agree with and adopt the reasoning of the Tenth Circuit in Leonhardt. We hold that the rule of Zahn remains viable notwithstanding Congress's enactment of § 1367. In the present case, therefore, the 30,000-plus members of the putative plaintiff class must each satisfy the jurisdictional amount-in-controversy requirement under 28 U.S.C. § 1332 for the district court to exercise subject matter jurisdiction over their cognizable state law claims. If no member of the plaintiff class satisfies the jurisdictional threshold, the state law claims were properly dismissed in their entirety by the district court. Accord Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1275 (11th Cir. 2000) ("If the plaintiffs do not prove that there are class members whose individual claims satisfy the amount in controversy requirement, the district court must dismiss the case for lack of jurisdiction.")

We now turn to the district court's determinations that the Nebraska Supreme Court would not recognize common law liability for medical monitoring and, even if it would, plaintiffs' claims could not be aggregated to satisfy the $75,000 jurisdictional threshold. The district court rejected plaintiffs' medical monitoring claim based upon the following reasoning:

Regarding the causes of action asserted under Nebraska law, the plaintiffs have cited no authority, and the court has found none, which would suggest that Nebraska law recognizes either a cause of action for medical monitoring or a remedy involving the creation of a medical monitoring fund. There exists no pending or prospective legislation to authorize a cause of action or a remedy for medical monitoring, and the court finds it improbable that the Nebraska courts would judicially fashion such a right or remedy. Consequently, in the absence of authority that Nebraska law recognizes a claim or remedy for the costs of future medical monitoring, the court declines to speculate that the allegations of the Third Amended Complaint seeking the creation of a medical monitoring fund furnish the jurisdictional amount otherwise absent in this action.

Slip op. at 16 (May 20, 1999).

Plaintiffs now contend that the district court should have waited for Asarco to file a motion for summary judgment challenging the medical monitoring claim, and then provided plaintiffs a full opportunity to argue the legal viability of that claim. Instead, plaintiffs argue, the district court *sua sponte* dismissed the medical monitoring claim prematurely and in violation of its own order of December 14, 1998.

Plaintiffs still have not cited any Nebraska authority for the proposition that damages may be awarded for future medical monitoring costs in the absence of a present physical injury. Thus, our recognition of such a cause of action would, in effect, expand substantive liability under Nebraska law. Under the circumstances, it would be both imprudent and improper for us to allow plaintiffs to pursue their medical monitoring claim. Cf. Tucker v. Paxson Mach. Co., 645 F.2d 620 (8th Cir. 1981) (in diversity case under Missouri law, rejecting plaintiff's argument for adoption in federal court of expanded strict products liability doctrine under state law, on ground that the trend was not well established); accord Birchler v. Gehl Co., 88 F.3d 518, 521 (7th Cir. 1996) ("When we are faced with opposing plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the

more expansive interpretation which creates substantially more liability."); Pearson v. John Hancock Mut. Life Ins. Co., 979 F.2d 254, 259 (1st Cir. 1992) (plaintiffs who chose federal forum "cannot justifiably complain if the federal court manifests great caution in blazing new state-law trails"); Villegas v. Princeton Farms, Inc., 893 F.2d 919, 925 (7th Cir. 1990) ("federal court is not the place to press innovative theories of state law"). Having agreed with the district court, on *de novo* review, that plaintiffs have not asserted a cognizable medical monitoring claim under Nebraska law, we need not consider plaintiffs' additional argument that their individual medical monitoring claims can be aggregated to satisfy the $75,000 jurisdictional requirement under 28 U.S.C. § 1332.

We next consider the district court's holding that, under Nebraska law, any recovery based upon damage to a landowner's property would be limited by the market value of that property. As stated above, the district court reasoned: "This court believes, and therefore, predicts that the Nebraska Supreme Court, if faced with the issue today, would adopt the rule set forth in Kietges[ v. VanDermeulen, 483 N.W.2d 137, 143 (Neb. 1992),] and "L" Investments[, Ltd. v. Lynch, 322 N.W.2d 651 (Neb. 1982)], limiting the recoverable costs of restoration or remediation to the market value of the property." Slip op. at 14-15 (May 20, 1999).

Plaintiffs now argue that the cases cited by the district court to support its interpretation of Nebraska law contain mere dicta on the issue, and that several other cases support the contrary view. They argue that Nebraska state courts have cited with approval § 929 of the Restatement (Second) of Torts (1979), and that comment b to that provision states: "[i]f a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building." See Brief for Appellants at 42-43. Plaintiffs thus contend that Nebraska courts would follow the Restatement, with the only possible exception being that the cost of restoration could not be *wholly unreasonable* or *grossly disproportionate* to the market value of the property. See id.

-29-

at 43 & n.12 (citing cases from other jurisdictions). Plaintiffs also suggest that, under the district court's interpretation of state law, polluters like Asarco would be encouraged to concentrate their operations in areas with low property values. That effect, plaintiffs argue, is contrary to the principles of public policy and equity embodied in the common law.

As stated above, we review the district court's determination of state law *de novo*. See Salve Regina College v. Russell, 499 U.S. at 231. The district court, and this court on appeal, must look to the pertinent decisions of the Nebraska Supreme Court and, if none are available, related state court precedents, analogous decisions, considered dicta, and other reliable sources. Our role is to determine what the Nebraska Supreme Court's decision would be. See Lindsay Mfg. Co. v. Hartford Accident & Indem. Co., 118 F.3d 1263, 1267-68 (8th Cir. 1997). Upon careful *de novo* review, we agree with the district court's interpretation of Nebraska law and conclude that the Nebraska Supreme Court would likely limit plaintiffs' recoveries on state law claims alleging property damage to the market values of their properties. See, e.g., "L" Investments, Ltd. v. Lynch, 322 N.W.2d at 656 (when an improvement to realty is damaged, the measure of damages for negligence is the reasonable cost or repairing or restoring in like kind and quality, plus any other consequential damages properly proven; however, "an award for such damage should not exceed the market value of the property immediately preceding the damage to the property"). Most notably, in "L" Investments, Ltd. v. Lynch, the Supreme Court of Nebraska stated: "It seems that one ought not to be able to recover a greater amount for partial destruction than one could recover for total destruction. To the extent that our previous decisions on this matter . . . are to the contrary, they are overruled." Id. Accordingly, we agree with the district court that the recoverable costs of restoring or remediating a property would be limited under Nebraska law to its market value.

Finally, we turn to the district court's determination that none of the members of the plaintiff class has cognizable state law claims exceeding $75,000. Plaintiffs argue

on appeal that the district court erroneously applied the preponderance of evidence standard, instead of the "legal certainty" standard, in reaching this determination. See Brief for Appellants at 38 (citing Larkin v. Brown, 41 F.3d at 388). Plaintiffs also argue that the district court improperly weighed evidence and resolved jurisdictional issues that are "bound up with the merits" of plaintiffs' claims. See id. at 45-46 (citing Osborne, 918 F.2d at 730). In any event, plaintiffs suggest, the district court could not have determined – either to a legal certainty or by a preponderance of the evidence – that members of the plaintiff class who own and occupy contaminated property do not have state law claims against Asarco exceeding $75,000. We disagree.

As we have previously stated, findings by the district court of jurisdictional facts are to be reviewed for clear error. See Osborne, 918 F.2d at 730. Contrary to plaintiffs' argument, this court did not change or disregard that standard of *review* when it indicated in Larkin v. Brown, 41 F.3d at 388, that a complaint predicated on diversity jurisdiction will be dismissed if it appears "to a legal certainty" that the claim is really for less than the jurisdictional amount. (Under such circumstances, the district court should dismiss the case, and failure to do so would be clear error.)

In the present case, while the district court could have been more specific in quantifying the market values of the individual plaintiffs' properties and the costs of remediation, the district court reasonably concluded that those values were well below the jurisdictional limit. The district court also logically determined that, even if plaintiffs could recover attorneys' fees on their state law claims (an issue we need not decide), their individual pro-rata shares could not be sufficient to get their claims above the jurisdictional threshold. In short, we have carefully reviewed the record in this case and the parties' arguments on appeal, and we hold that the district court did not clearly err in finding that no member of the plaintiff class satisfies the jurisdictional amount-in-controversy requirement under 28 U.S.C. § 1332.

We hold that the district court did not err in dismissing plaintiffs' state law claims for lack of subject matter jurisdiction.

## Conclusion

For the reasons stated, the judgment of the district court is affirmed.

A true copy.

Attest:

U.S. COURT OF APPEALS, EIGHTH CIRCUIT.