**QUARLES PETROLEUM COMPANY, INC. and Virginia Tank Lines, Inc.**

v.

**The UNITED STATES.**

No. 428–75.

United States Court of Claims.

Feb. 23, 1977.

James H. Price, III, Richmond, Va., attorney of record, for plaintiffs. Browder, Russell, Little, Morris & Butcher, Richmond, Va., of counsel.

Michael P. Carlton, Washington, D. C., with whom was Asst. Atty. Gen. Peter R. Taft, Washington, D. C., for defendant. Alfred T. Ghiorzi, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS and KASHIWA, Judges.

## ON DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge.

This case is before this court on cross motions for summary judgment. Each party submitted its respective motion without oral argument. The pleadings and answers to interrogatories in this action show that there is no genuine issue as to any material fact. We hold for the plaintiffs and against the defendant.

Plaintiffs, Quarles Petroleum Company, Inc. ("Quarles") and Virginia Tank Lines, Inc. ("Virginia Tank") seek for and on behalf of Federated Insurance Company ("Federated") to recover costs allegedly incurred in cleaning up an oil spill. The action is based exclusively upon Section 311(i)(1) of the Federal Water Pollution Control Act, codified at 33 U.S.C. § 1321(i)(1).[1]

The following facts are not in dispute. Virginia Tank and Quarles are separate corporations with a common ownership. On February 1, 1975, a tank truck owned by Virginia Tank, carrying approximately 7,300 gallons of fuel oil owned by Quarles, was being driven by John Coryell Hayden, an employee of Virginia Tank, along U.S. Route 29 near Warrenton, Virginia. At approximately 1:30 a. m. on that day, Gordon N. Gill attempted to make a left turn in his automobile from the right-hand lane of Route 29 and turned into the path of the Virginia Tank truck. Hayden braked and turned his wheels to the right in an effort to avoid striking the automobile operated by Gill, but was unable to do so. The tank truck overturned and the tank ruptured, allowing approximately 6,500 gallons of oil to spill into Licking Run Creek, a navigable water of the United States within the meaning of the Federal Water Pollution Control Act. At the time of the accident it was raining and Hayden was traveling at a speed of approximately 50 m.p.h. (speed limit: 55 m.p.h.) with the tank truck lights and windshield wipers operating properly. The Virginia State Police accident report states that Gill was "Driving Drunk" at the time. For the purposes of this action, the parties agree that the discharge of oil into Licking Run Creek was caused solely by the act or omission of Gordon N. Gill.

Mr. William Crumpler, as General Manager of Virginia Tank, reported the oil spill to the United States Coast Guard and the United States Environmental Protection Agency on the morning of the accident. Various steps immediately were taken to contain and begin removal of the spilled oil, a task complicated by heavy snow and subsequent rain. For assistance in cleaning up the spilled oil, Mr. Crumpler contacted Petroleum Engineering Company, Inc. and Industrial Marine Service, Inc. The total cost of the clean up operations was $10,133.45, which the parties acknowledge is reasonable. Plaintiffs' insurer paid out the $5B10,-133.45 in individual checks payable to the persons and companies which had provided goods or services in cleaning up the spilled oil.

The Federal Water Pollution Control Act provides that certain parties under certain circumstances may recover from the United States monies they have expended in removing oil spills from navigable waters of the United States. The statute, 33 U.S.C. § 1321(i)(1), provides in pertinent part as follows:

Recovery of removal costs

(i)(1) In any case where an owner or operator of a vessel or an onshore facility or an offshore facility from which oil or a hazardous substance is discharged in violation of subsection (b)(3) of this section acts to remove such oil or substance in accordance with regulations promulgated pursuant to this section, such owner or operator shall be entitled to recover the reasonable costs incurred in such removal upon establishing, in a suit which may be brought against the United States Government in the United States Court

---

1. 33 U.S.C. § 1321(i)(1) (Supp. V, 1975).

of Claims, that such discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether such act or omission was or was not negligent, or any combination of the foregoing causes.

As this court stated in *Yankee Metal Products, Inc. v. United States*, 538 F.2d 347, 209 Ct.Cl. 770 (1976), there are four separate elements of a claim for relief under this provision:

> (1) A discharge of a harmful quantity of oil from a facility owned or operated by plaintiff;
>
> (2) A discharge caused solely by * * an act or omission of a third party;
>
> (3) Removal of the oil in accordance with regulations; and
>
> (4) Expenditure by plaintiff of monies to remove the oil.

As the facts in this action show, the plaintiffs have satisfied elements (1), (2) and (3). The issue before this court concerns element (4). Precisely, the issue is whether plaintiffs for and on behalf of their insurance company qualify under § 1321(i)(1) to recover from the United States costs of an oil spill clean up operation which costs were incurred by the plaintiffs but paid by the insurance company.

■ Plaintiffs admit that they initiated this suit for and on behalf of their insurance carrier, Federated, to recover from the United States the monies expended by Federated in removing plaintiffs' oil spill. Federated, as the insurer of the plaintiffs, was obligated to pay such expense and after payment became subrogated to the insureds' rights of action by the terms of the insurance contract. Although plaintiffs have not made Federated a party to this action, the record, including the briefs and exhibits filed by both parties, makes it clear that Federated's economic interest is actually at stake in this claim. Therefore, we deem that plaintiffs are bringing this action for the use and benefit of Federated Insurance Company.

The Government contends that the plaintiffs cannot prevail in this action because § 1321(i)(1) by its terms and by decisions of this court [2] only allows recovery of clean up costs to an "owner or operator" of certain facilities from which oil is discharged; an insurer of such an owner or operator in its own name or in the name of its insured cannot recover clean up costs under this section. Specifically, defendant asserts that the plaintiffs have failed to show that they have expended any money in the clean up for which they must be reimbursed by the United States pursuant to § 1321(i)(1), since plaintiffs' insurance company paid the entire $10,133.45. Insofar as it is not an "owner or operator" as required by statute,[3] defendant maintains that the insurance company is precluded from proceeding in its own name to recover the clean up costs. Concomitantly, the fact that this action for the benefit of the insurer is brought in the names of the insureds, the actual owner-operators, should not, defendant proposes, change the result. It is our belief that defendant's conclusion is not sound.

Defendant has not pointed to nor are we able to find any indication in the legislative history of the Federal Water Pollution Control Act Amendments of 1972, or its predecessor, that Congress intended to preclude recovery from the United States of oil spill removal costs under § 1321(i)(1), when such costs, although paid out by the insurers on behalf of their clients, were incurred by the owner-operators of the oil discharging facility. This is true even though Congress was aware of the role that insurance companies

---

2. Defendant supports its contention by relying on this court's decisions in *Gulf Refining Co. v. United States*, 521 F.2d 1406, 207 Ct.Cl. 971 (1975); *Shell Oil Co. v. United States*, Ct.Cl., 538 F.2d 346 (1976); *Celestial Navigation Corp. v. United States*, Ct.Cl., 538 F.2d 346 (1976); and *Yankee Metal Products, Inc. v. United States, supra.*

3. For the purpose of § 1321, owner or operator is, in the case of a motor vehicle, any person, including a corporation, owning or operating such vehicle. 33 U.S.C. § 1321(a)(6)(B); (a)(7); and (a)(10).

played in the oil transportation business.[4] In addition, the defendant cites no case wherein the issue was decided that an insurer, as subrogee, may not recover under § 1321(i)(1). Although the defendant directs this court's attention to our decision in *Yankee Metal Products, Inc. v. United States, supra,* we do not feel that our decision in that case provides guidance to decide the instant subrogation issue. The plaintiff in *Yankee Metal Products* did not recover under § 1321(i)(1) because its petition did not allege that the spilled oil was discharged from a facility owned or operated by it. Furthermore, that plaintiff had not alleged the *amount* of expenses it incurred in the clean up operations; without a damage claim, this court could not act. The other cases, *Gulf Refining Co. v. United States, supra* note 2, *Shell Oil Co. v. United States, supra* note 2, and *Celestial Navigation Corp. v. United States, supra* note 2, cited by the defendant to support the proposition that an insurer, as subrogee, may not recover the monies outlayed in cleaning up spilled oil because it is not an "owner or operator" as required under § 1321(i)(1), also do not help us to decide the instant subrogation issue. In fact, the factual situations and the legal issues before the court in each of the above cases are totally unrelated to the instant case.

 Inasmuch as the record shows that the plaintiffs' insurance company paid the entire $10,133.45 which the plaintiffs seek to recover, defendant presumes that the plaintiffs, Quarles and Virginia Tank, have "failed to show that they have incurred any costs in the clean-up, as required by statute." We disagree with the defendant. Section 1321(i)(1) speaks in terms of the owner-operator recovering from the United States "the reasonable costs *incurred* in such removal." To incur means to become liable for or subject to;[5] it does not mean to actually pay for. The facts in the instant case clearly demonstrate that the plaintiffs through their own actions were liable for the costs resulting from the clean up operations. It was the plaintiffs' general manager who negotiated assistance in cleaning up the spilled oil. As a result, the plaintiffs were liable to pay the persons and companies which had provided the goods and services in removing the spilled oil. The fact that the plaintiffs were insured and that the plaintiffs' insurer paid out the total cost of the clean up operations is immaterial under § 1321. In our opinion, the plaintiffs, Quarles and Virginia Tank, satisfy the statutory requirements of § 1321(i)(1). Nevertheless, the defendant next argues that jurisdictionally this court is still restricted from considering this action because the United States has not waived its sovereign immunity from suit by the insurance company or by the plaintiffs for and on behalf of their insurance company.

 It is well established and readily admitted by this court that statutes waiving the immunity of the United States must be strictly construed.[6] But just as impelling is the duty of this court to follow the intent of the Congress to make the United States fully liable to suit, and to accord every person, firm or corporation such right of action when an enactment of the Congress is clear in its purpose to waive the sovereign immunity.[7]

 A clearer waiver of immunity than that contained in 33 U.S.C. § 1321(i)(1) is not easily phrased. Once the owner-operator satisfies the other jurisdictional limitations imposed by § 1321(i)(1), "* * * suit * * * may be brought against the United States Government in the United States

---

4. The financial responsibility requirements imposed by 33 U.S.C. § 1321(p) demonstrate Congressional awareness of the insurance carrier's role in the oil transportation field.

5. Webster's Third New International Dictionary, 1971. *See also* Ballentine's Law Dictionary, Third Edition, 1969; and Black's Law Dictionary, Fourth Edition, 1968.

6. *Schillinger v. United States,* 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108 (1894).

7. *Tlingit & Haida Indians of Alaska v. United States,* 177 F.Supp. 452, 462, 147 Ct.Cl. 315, 331 (1959).

Court of Claims * * * ." No intimation arises in this section to outlaw suit for and on behalf of a subrogee. As earlier mentioned, Congress was well aware of the import insurance carriers maintained in the oil transportation business. In addition, the overall intention of Congress in enactment of the Federal Water Pollution Control Act was to eliminate or to reduce as much as possible all water pollution throughout the United States. This court by restricting the application of § 1321(i)(1) to non-insured owner-operators not only would hamper this overall concern of environmental purification, but would run afoul of the case law interpreting other federal statutes similarly silent on the right of subrogation.

The Federal Tort Claims Act [8] ("FTCA") is similar to the Federal Water Pollution Control Act in that both acts allow recovery against the United States for certain claims and both acts are silent in their terms on the issue of subrogation. Specifically, 28 U.S.C. § 1346 (1970), providing exclusive jurisdiction in district courts under the FTCA, provides in pertinent part:

(b) Subject to the provisions of chapter 171 of this title, the district courts, * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the *claimant* in accordance with the law of the place where the act or omission occurred. [Emphasis supplied.]

By its expressed terms, the above section permits recovery from the United States by only "the claimant"; the section does not include or preclude recovery by the subro-

gee of the claimant. Nevertheless, courts have allowed a subrogee of a claimant to recover against the United States under the FTCA. *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949); *United States v. United Services Automobile Association*, 238 F.2d 364 (8th Cir. 1956). The court in *United Services Automobile Association* stated:

An insurer has a right to sue under the Tort Claims Act on a claim to which it has become subrogated by payment to an insured who would have been able to bring such an action. [Citation omitted.] [238 F.2d at 366.]

With relation to the doctrine of sovereign immunity under the FTCA, the Court in *United States v. Yellow Cab Co.*, 340 U.S. 543, 547–48, 71 S.Ct. 399, 402–403, 95 L.Ed. 523 (1951), stated:

The Federal Tort Claims Act waives the Government's immunity from suit in sweeping language. It unquestionably waives it in favor of an injured person. It does the same for an insurer whose claim has been subrogated to his. [Citation omitted; footnote omitted.]

Neither the subrogation to the insurance carrier of the injured person's rights under the FTCA nor the doctrine of sovereign immunity has prevented the maintenance by the subrogated insurance company of a suit against the United States under the FTCA.

Other federal statutes silent on the right of subrogation are popularly known as the Suits in Admiralty Act [9] and the Public Vessels Act.[10] In neither statute is the right of subrogation expressly included or precluded; however, courts when faced with the problem of statutory construction have implied the right of subrogation under each statute.[11]

Notwithstanding the analogies to the Federal Tort Claims Act, the Suits in Admi-

---

8. Codified in 28 U.S.C. §§ 1346, 2671–2680 (1970).

9. 46 U.S.C. §§ 741–752 (1970).

10. 46 U.S.C. §§ 781–790 (1970).

11. *See Defense Supplies Corp. v. United States Lines Co.*, 148 F.2d 311 (2d Cir. 1945), and *United States Fidelity & Guaranty Co. v. United States*, 56 F.Supp. 452 (S.D.N.Y.1944), *aff'd*, 152 F.2d 46 (2d Cir. 1945).

ralty Act and the Public Vessels Act, we see no reason not to permit an owner-operator to recover under § 1321(i)(1) for and on behalf of its subrogated insurance carrier.

■ First, under the doctrine of subrogation of insurer, an insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. In such circumstances, the subrogee "stands in the place" of the insured and obtains equivalent but no greater rights than held by the insured. *Cf., United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *First National City Bank v. United States,* Ct.Cl., 548 F.2d 928, 936 (decided January 26, 1977). As a result, Federated, as plaintiffs' subrogee, would recover under § 1321(i)(1) only if plaintiffs, as owners-operators, would be entitled to recover. There would be no extension of liability or additional waiver of sovereign immunity against the United States by allowing a subrogee to recover through its insured owner-operator under § 1321.

■ Second, to recognize subrogation under § 1321(i)(1) would not subvert the limitations of the anti-assignment part of the Assignment of Claims Act, 31 U.S.C. § 203 (1970). The statutory purposes of that legislation are to prevent fraud, control multiple litigation, and confine the Government's dealings to a very limited number of persons or entities. *United States v. Aetna Casualty & Surety Co.,* supra, 338 U.S. at 373, 70 S.Ct. 207; *United States v. Shannon,* 342 U.S. 288, 291–92, 72 S.Ct. 281, 96 L.Ed. 321 (1952); and *First National City Bank v. United States, supra* at 936. Moreover, that statute only applies to voluntary transfers, and not to assignments by operation of law such as subrogation. *United States v. Aetna Casualty & Surety Co., supra.*

12. *See, e. g.,* 33 U.S.C. § 1321(p).

13. *Cf., Owens-Corning Fiberglas Corp. v. United States,* 419 F.2d 439, 453, 190 Ct.Cl. 211, 236 (1969); *Merritt-Chapman & Scott Corp. v. United States,* 458 F.2d 42, 43, 198 Ct.Cl. 223

Third, to deny subrogation under § 1321 may discourage insurance carriers either from writing policies covering those engaged in the oil transportation business or from writing policies covering oil spill removal operations. In either case, the general import of the Federal Water Pollution Control Act may be adversely affected.[12]

In conclusion, we are of the opinion that an owner-operator satisfying the other requirements under § 1321(i)(1) may maintain a suit against the United States, for and on behalf of the owner-operator's subrogee, seeking recovery of the reasonable amount the owner-operator incurred in the oil spill removal operations. Where the owner-operator prosecutes a claim in its own name for and on behalf of its insurance carrier, under the principles of subrogation of the insurer, we will regard the suit solely as one maintained by the owner-operator for the purposes of § 1321(i)(1).[13] The fourth requirement reiterated by this court in *Yankee Metal Products, Inc. v. United States, supra,* interpreting § 1321(i)(1), is clarified by this decision to mean "Expenditure by plaintiff [or its subrogee] of monies to remove the oil."

## CONCLUSION

■ The facts in the instant action clearly demonstrate that the plaintiffs, Quarles and Virginia Tank, have satisfied the requirements of § 1321(i)(1), viz.: The plaintiffs incurred reasonable costs in removing a harmful quantity of oil which was discharged into navigable waters of the United States from a facility owned or operated by the plaintiffs and which discharge was caused solely by an act or omission of a third party. For the foregoing reasons, the court concludes that the plaintiffs are entitled to recover for and on behalf of Federated Insurance Company the $10,133.45 costs incurred by plaintiffs.

(1972); cases under the principles of contract privity where this court regards a suit prosecuted by a prime contractor for and on behalf of its subcontractor as one solely by the prime contractor.

Accordingly, defendant's motion to dismiss the petition for failing to state a cause of action and defendant's motion for summary judgment are both denied; plaintiffs' cross motion for summary judgment is granted. Judgment is entered in favor of the plaintiffs for and on behalf of Federated Insurance Company in the amount of $10,133.45.