Elizabeth Dutton SWEET and Frederick H. Grein, Jr., in their capacities as Executors under the will of William H. Sweet,

and

Massachusetts Institute of Technology,

and

Massachusetts General Hospital, Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 00–274C, 00–292C, 01–434C.

United States Court of Federal Claims.

Filed: Jan. 11, 2005.

Opinion originally issued on Nov. 19, 2004.

James B. Re, Boston, MA, for plaintiffs Elizabeth Dutton Sweet and Fredrick H. Grein, Jr., Executors under the will of William H. Sweet, M.D.

Owen Gallagher, Boston, MA, for plaintiff Massachusetts Institute of Technology.

Joseph L. Doherty, Jr., Boston, MA, for plaintiff Massachusetts General Hospital.

Brian M. Simkin, U.S. Department of Justice, Washington, DC, with whom were Peter D. Kiesler, Assistant Attorney General, and Director David M. Cohen, for defendant.

## AMENDED OPINION

FIRESTONE, Judge.

In this action, the plaintiffs are seeking attorneys' fees, expenses, and settlement costs under an indemnification agreement between the Massachusetts Institute of Technology ("MIT") and the United States that was executed pursuant to the Price–Anderson Act, Pub.L. No. 85–744, 72 Stat. 837 (1958) (current version at 42 U.S.C. § 2210 (2004)). In *Sweet v. United States,* 53 Fed.Cl. 208 (2002) ("*Sweet I*") this court held that under the terms of the Price–Anderson Act and the indemnification agreement between MIT and the United States, the plaintiffs were entitled to indemnity from the government for the "reasonable costs of investigating, settling and defending claims for public liability" that they incurred in defending themselves against claims for "public liability" in *Heinrich v. Sweet,* 118 F.Supp.2d 73 (D.Mass.2000). The plaintiffs also seek indemnity for the attorneys' fees and expenses they have incurred in connection with the pending litigation.[1] For the reasons that

---

1. Dr. Sweet also seeks attorneys' fees and expenses incurred in his pursuit of private insurance to defend him in the *Heinrich* litigation. As

follow, the court will allow the plaintiffs the opportunity to show that the attorneys' fees and expenses they incurred in defense of the *Heinrich* litigation were "reasonable" and therefore recoverable under the indemnity agreement between MIT and the United States. The plaintiffs' claims for attorneys' fees in the present litigation are denied on the ground that the claim is premature.

## BACKGROUND

A complete history of the present case can be found in the court's first opinion, *Sweet I*, 53 Fed.Cl. 208 (2002). The current dispute over indemnification of attorneys' fees and other defense costs centers on a series of agreements entered into pursuant to the Atomic Energy Act of 1954 and subsequent amendments in the Price–Anderson Act passed in 1957. The Price–Anderson Act was passed to encourage the development of nuclear capabilities in the United States. The Atomic Energy Commission ("AEC") and its successor agency, the Nuclear Regulatory Commission ("NRC"), entered into agreements with MIT to operate a nuclear reactor and to use it for research in nuclear medicine. As part of its licensing agreement, the AEC entered into an interim indemnity agreement with MIT, which was later superseded by additional indemnity agreements, including the MIT E–39 Indemnity Agreement (the "Agreement"), between MIT and AEC/NRC, at issue here. Under the terms of the Agreement, the United States agreed to indemnify MIT for certain damages and claims arising from radiation exposure at the MIT reactor. The Price–Anderson Act, upon which the Agreement is based, states in relevant part:

> With respect to any license issued ... for the conduct of educational activities to a person found by the Commission to be a nonprofit educational institution, the Commission shall exempt such licensee from the financial protection requirement of subsection (a) of this section. With respect to licenses issued between August 30, 1954, and August 1, 1967, for which the Commission grants such exemption:

discussed later in the opinion, this claim is de-

> (1) [T]he Commission shall agree to indemnify and hold harmless the licensee and other persons indemnified, as their interest may appear, from public liability in excess of $250,000 arising from nuclear incidents. The aggregate indemnity for all persons indemnified in connection with each nuclear incident shall not exceed $500,000,000, *including the reasonable cost of investigating and settling claims and defending suits for damage* ....

Price–Anderson Act § 170(k), Pub.L. No. 85–744, 72 Stat. 837 (1958) (current version at 42 U.S.C. § 2210(k) (2004)) (emphasis added). In the Price–Anderson Act, the term "public liability" is defined to mean:

> [A]ny legal liability arising out of or resulting from a nuclear incident or precautionary evacuation ..., except: (i) claims under State or Federal workmen's compensation acts; (ii) claims arising out of an act of war; and (iii) whenever used in subsections (a), (c), and (k) of section 2210 of this title, claims for loss of, or damage to, or loss of use of property which is located at the site of and used in connection with the licensed activity where the nuclear incident occurs.

42 U.S.C. § 2014(w) (2004).

The MIT/AEC E–39 Indemnity Agreement, which incorporated the language in the Price–Anderson Act, states:

> 1. The Commission undertakes and agrees to indemnify and hold harmless the licensee and other persons indemnified, as their interest may appear, from public liability ....
>
> 3. The Commission agrees to *indemnify and hold harmless* the licensee and other persons indemnified, as their interest may appear, *from the reasonable costs of investigating, settling and defending claims for public liability.*
>
> 4. (a) *The obligations of the Commission under this Article shall apply only with respect to such public liability, such damage to property of persons legally liable for the nuclear incident ... and such reasonable costs described in paragraph 3 of this*

nied.

*Article as in the aggregate exceed $250,-000.*

(b) With respect to a common occurrence, the obligations of the Commission under this Article shall apply only with respect to such public liability, such damage to property of persons legally liable for the nuclear incident ... and to such reasonable costs described in paragraph 3 of this Article ....

6. The obligations of the Commission under this and all other agreements and contracts to which the Commission is a party shall not in the aggregate exceed $500,000,000 with respect to any nuclear incident.

Agreement, Art. III, ¶¶ 1, 3, 4, 6 (emphasis added). "Public liability" in the Agreement is defined as:

[A]ny legal liability arising out of or resulting from a nuclear incident, except (1) claims under state or Federal Workmen's Compensation Acts of employees of persons indemnified who are employed (a) at the location or, if the nuclear incident occurs in the course of transportation of the radioactive material, on the transporting vehicle, and (b) in connection with the licensee's possession, use, or transfer of the radioactive material; and (2) claims arising out of an act of war; and (3) claims for loss of, or damage to, or loss of use of (a) property which is located at the location and used in connection with the license's possession, use, or transfer of the radioactive material, and (b), if the nuclear incident occurs in the course of transportation of the radioactive material, the transportation vehicle, containers used in such transportation, and the radioactive material.

Agreement, Art. I, ¶ 5 (the first two exceptions were enacted on June 9, 1958, while the third was added on September 6, 1961).

Art. IV of the Agreement identifies the government's right to participate in any case in which an indemnitee might be responsible for a "public liability." It provides:

When the Commission determines that the United States will probably be required to make indemnity payments under the provisions of this agreement, the Commission shall have the right to collaborate with the licensee and other persons indemnified in the ... defense of any claim and shall have the right ... (b) to appear through the Attorney General of the United States on behalf of the licensee or other person indemnified, to take charge of such action and settle or defend any such action.

Agreement, Art. IV, ¶ 1.

In 1995, surviving family members of patients involved with experiments in nuclear medicine at the MIT nuclear reactor in the late 1950s and 1960s brought a civil tort action against various doctors and entities, including Dr. Sweet, Massachusetts General Hospital ("MGH"), and MIT (the "plaintiffs" in this case). In what became known as the *Heinrich* litigation, the family members sought damages for the deaths that were allegedly caused by the direct radiation exposure authorized in those experiments. Dr. Sweet and MGH, but not MIT, were found liable in the district court. Dr. Sweet and MGH appealed the jury verdict to the United States Court of Appeals for the First Circuit. Although MIT was found not liable, it entered into a settlement with the *Heinrich* plaintiffs in the amount of $10,000.[2]

While the *Heinrich* litigation was pending, the plaintiffs filed their complaints in this court seeking indemnity both for a public liability and for defense costs arising from the *Heinrich* litigation. The government filed a motion to dismiss and a motion for partial summary judgment on January 12, 2001. On August 7, 2002, this court issued

---

2. According to the affidavit of Owen Gallagher, counsel for MIT, the *Heinrich* plaintiffs noticed an appeal of the judgment in favor of MIT. Thereafter, the *Heinrich* plaintiffs and MIT entered into a settlement in the amount of $10,000. MIT notified the government of the terms of the settlement before it was finalized. The government, in correspondence to MIT, stated that it would not take a position on terms of the settle-

ment. The government represented, however, that "should the settlement described ... be consummated, defendant in [the pending suit] will not raise the argument that the fact of settlement, by itself, operates as a bar to MIT's pending indemnification claims for investigating and defending the claims asserted in [the *Heinrich* litigation]." Letter from Simkin to Gallagher of 1/22/02.

an order granting the government's motion to dismiss the plaintiffs' declaratory relief claims but denying the government's motion for partial summary judgment as to the indemnification claims. The court held that the plaintiffs were entitled to indemnification under the Agreement and the Price–Anderson Act for damages arising from medical experiments at the MIT reactor on the ground that the experiments resulted in a "public liability," within the meaning of the Agreement. 53 Fed.Cl. at 224. The court also concluded that plaintiffs would be entitled to indemnity for the costs they incurred in investigating, settling and defending the claims for public liability filed against them under the terms of the Agreement. 53 Fed. Cl. at 226. In addition, the court rejected the government's argument that subsequent amendments to the Price–Anderson Act in 1975 and 1988,[3] which removed and then reinstated recovery for the costs of "investigating, settling and defending claims for public liability," altered the government's indemnity obligations in this case. The court concluded that the 1975 and 1988 amendments to the Price–Anderson Act did not alter the government's liability for acts that occurred prior to the amendments and thus did not alter the government's indemnity obligations regarding the public liability claims in the *Heinrich* case. *Id.*

After this court issued its decision, the United States Court of Appeals for the First Circuit vacated the finding of liability against Dr. Sweet and MGH in the *Heinrich* case. Thereafter, *certiorari* was denied. *Heinrich v. Sweet*, 308 F.3d 48 (1st Cir.2002), *cert. denied*, 539 U.S. 914, 123 S.Ct. 2273, 156 L.Ed.2d 129 (2003). Following the First Circuit's decision and the denial of *certiorari*,

the plaintiffs requested indemnity for the attorneys' fees, settlement costs and expenses they had incurred in connection with the *Heinrich* and related litigation. Settlement efforts failed and the court asked for briefing on: (1) whether the plaintiffs are entitled to indemnification for attorneys' fees and expenses paid or otherwise provided by their insurers under private insurance policies; (2) how the $250,000 deductible set forth in the Price–Anderson Act and Agreement should be applied; and (3) whether the term providing reasonable costs of "defending claims for public liability" under the Price–Anderson Act and the Agreement authorizes the payment of "attorneys' fees."

Based on the plaintiffs' responses, the government has moved to disallow all of the plaintiffs' claims for indemnification. The court heard oral argument on the parties' briefs on October 22, 2004.[4]

## DISCUSSION

### I. Position of the Parties

The government principally argues that it does not owe the plaintiffs MIT and Dr. Sweet their attorneys' fees and expenses because their private insurance companies provided their defenses in the *Heinrich* lawsuit. The government argues that it does not have an obligation to indemnify persons who were provided a defense by insurers with a "duty to defend." Because MIT and Dr. Sweet have been fully compensated by their private insurers for their defense costs, the government argues, they are not entitled to indemnity under the Agreement. The government argues that MIT and Dr. Sweet are seeking a double recovery. It is not disputed that MGH paid for its own defense.

The government also argues that the Agreement does not authorize the payment

3. The Price–Anderson Act was amended in 1975. Under an amendment offered by Senator William D. Hathaway, §§ 170(c), (d), and (k) were amended to exclude the "cost of investigating and settling claims and defending suits for damage" from the "aggregate indemnity for all person indemnified in connection with each nuclear incident ..." Act of Dec. 31, 1975, Pub.L. No. 94–197, Secs. 4(b), 5(b), 10(b), §§ 170(c), (d), (k), 89 Stat. 1111, 1113–14 (current version at 42 U.S.C. § 2210 (2004)). Congress amended the Price–Anderson Act again in 1988. In 1988 Congress reinstated indemnification for investigating, settling and defending claims for public lia-

bility. The amendment by its terms applied only "with respect to nuclear incidents occurring on or after" August 20, 1988. Price–Anderson Amendments Act of 1988, Pub.L. No. 100–408 § 20, 102 Stat. 1066, 1084 (1988). As noted above, the court determined that the 1975 and 1988 amendments did not interfere with the plaintiffs' vested rights to indemnity for nuclear incidents that had occurred prior to 1975.

4. The court is treating the parties' briefs as cross-motions for partial summary judgment.

of attorneys' fees as a component of the costs of "defending claims for public liability" in any event. The government argues that it is only liable for attorneys' fees upon an express waiver of sovereign immunity. The government argues that the Price–Anderson Act did not waive the sovereign immunity of the United States to pay attorneys' fees as part of any indemnity agreement authorized by the Price–Anderson Act. The government contends that the agreement to indemnify the plaintiffs for the "reasonable costs of . . . defending claims for public liability" does not expressly include attorneys' fees and thus does not cover the attorneys' fees incurred by MGH or by MIT's and Dr. Sweet's insurers.

Next, the government contends that the plaintiffs have not exceeded the deductible established in the Price–Anderson Act and the Agreement. The government argues that the Price–Anderson Act establishes a separate $250,000 deductible for each nuclear incident associated with the medical experiments at MIT. The government argues that each individual patient's series of experiments involves a separate nuclear incident and that there were two or perhaps four separate incidents that were the subject of the *Heinrich* litigation. The government further argues that each of the individual plaintiffs is required to meet the full deductible. Thus, the government argues that should the government be liable under the Agreement, it is only required to pay after each plaintiff exceeds either a $500,000 or $1 million deductible, depending upon the number of "nuclear incidents" involved.

Finally, the government argues that the plaintiffs are not entitled to the attorneys' fees they incurred in pursuit of either the pending litigation or Dr. Sweet's litigation to secure insurance. The government contends that both the attorneys' fees and expenses incurred in connection with the present action and Dr. Sweet's lawsuit against his private insurer are outside the scope of the Agreement. The government further argues that the plaintiffs' claims for attorneys' fees incurred in litigating this case under the Equal Access to Justice Act, 28 U.S.C. § 2412 (2004), are premature.

The plaintiffs disagree with the government and in various briefs argue that the government is liable under the indemnity agreement for attorneys' fees, expenses, and settlement costs, regardless of whether private insurance covered those costs. MIT and Dr. Sweet rely on numerous cases for the proposition that indemnitors are required to pay their indemnitees even when private insurance has paid for the indemnitee's defense. MIT and Dr. Sweet represent that their insurers have subrogation rights in this litigation and thus MIT and Dr. Sweet will not receive a double recovery if they prevail.

The plaintiffs also argue that the Price–Anderson Act and the Agreement encompass attorneys' fees within the meaning of the "costs of . . . defending claims for public liability." Agreement, Art. III, ¶ 3. The plaintiffs argue that the "costs of . . . defending claims" means attorneys' fees and other expenses incurred by an indemnitee in defending claims for public liability.

MIT, Dr. Sweet and MGH also argue that they are entitled to the attorneys' fees and expenses they have incurred in the present litigation to secure indemnification. Dr. Sweet also argues that he is entitled to the defense costs he incurred in his suit to compel his private insurer to defend in the *Heinrich* litigation.

Finally, the plaintiffs disagree with the government's proposed interpretation of the Price–Anderson Act and the Agreement with respect to the $250,000 deductible. The plaintiffs contend that the medical experiments at the MIT reactor which gave rise to the *Heinrich* litigation involve a single nuclear incident and thus a single $250,000 deductible applies. MGH contends that the $250,000 is not a deductible but simply a threshold designed to weed out *de minimis* claims. In the alternative, MGH argues that the $250,000 deductible should be divided equally among the three plaintiffs.

## II. The Government is Obligated to Indemnify the Plaintiffs For the Reasonable Attorneys' Fees, Expenses and Settlement Costs Incurred in the *Heinrich* litigation

### A. The Legal Consequence of MIT's and Dr. Sweet's Private Insurance

■ The Agreement provides in relevant part as follows: "The Commission agrees to

indemnify and hold harmless the licensee and other persons indemnified ... from the reasonable costs of investigating, settling and defending claims for public liability [collectively referred to as defense costs]." Agreement, Art. III, ¶ 3. The government contends that the Agreement only indemnifies plaintiffs against out of pocket defense costs. According to the government, because MIT and Dr. Sweet never incurred any defense costs, the government does not have any indemnity obligation. Indeed, the government argues that MIT and Dr. Sweet are in effect seeking a double recovery. Having already received the benefit of private insurance, they are not entitled to payment from the government for the same services.

MIT does not dispute that it has not incurred any out of pocket defense costs. Dr. Sweet does not dispute that his defense costs for the services of Sally & Fitch LLP and Mr. Doherty's former firm were paid by insurance. However, both maintain that indemnitors are liable for defense costs regardless of whether those costs were assumed by private insurers for the indemnitee. Relying on numerous cases dealing with indemnity contracts, MIT and Dr. Sweet contend that an indemnitor is not excused from its obligations simply because an indemnitee was provided a defense by private insurance.

MIT and Dr. Sweet argue that the law governing indemnity generally provides that an "indemnitee is entitled to recover from an indemnitor, as part of its damages ... attorney's fees expended in defense of the suit ... even though counsel appearing for the indemnitee was furnished by his insurance carrier." 41 Am.Jur.2d *Indemnity* § 48 (2004); *see also* 42 C.J.S. *Indemnity* § 20 (2004) ("The fact that the indemnitee had not paid defense costs, but his insurer had, does not relieve the indemnitor of the liability to reimburse the indemnitee."). This view is repeated in numerous cases, including *Bank of the West v. Valley Nat'l Bank of Arizona,* 41 F.3d 471, 480 (9th Cir.1994), wherein the court held that the "general principle [is] that [an] indemnitor[ ] must pay all the legal expenses of its indemnitee even if the indemnitee's insurer already paid for the expenses." *See also Fontenot v. Mesa Petro-*

*leum Co.,* 791 F.2d 1207, 1220 (5th Cir.1986) (holding that indemnitor could not avoid its indemnification responsibility through "the fortuity of the indemnitee having obtained a liability insurance policy"); *Spurr v. LaSalle Constr. Co.,* 385 F.2d 322, 330–31 (7th Cir. 1967) (holding that "the fact that the indemnitee's liability was covered by insurance does not negate the indemnitor's obligation"); *N. Cent. Airlines, Inc. v. City of Aberdeen,* 370 F.2d 129, 134 (8th Cir.1966) (holding that the fact that the indemnitee had contracted with an insurance carrier to protect itself from the same risk did not "exonerate [the indemnitor] from its duty to indemnify according to the agreement"); *Lesmark, Inc. v. Pryce,* 334 F.2d 942, 945 n. 7 (D.C.Cir.1964) ("[T]he indemnitor is not relieved from liability [for defense costs, including attorneys' fees] either on the theory that the insurer is entitled to reimbursement out of the indemnitee's recovery, or that 'the defendant should not benefit from a contract providently made and paid for by the plaintiff.' ") (citation omitted) (quoting Note, 63 Harv. L.Rev. 330, 332 (1949)); *Carson Harbor Village. Ltd. v. Unocal Corp.,* 287 F.Supp.2d 1118, 1196–97 (C.D.Cal.2003) (holding that an indemnitor "may not avoid [its] indemnity obligation by pointing to the fact that ... [the indemnitee has recouped its costs].").

The government argues that the above-cited indemnity cases should not be controlling. The government contends that under the Federal Circuit's holding in *LaSalle Talman Bank, F.S.B. v. United States,* 317 F.3d 1363 (Fed.Cir.2003), the court must deduct from any award to the plaintiffs the amounts or value they received from their insurers. According to the government, *LaSalle Talman* holds that the benefits a party receives in connection with a breach of contract must be deducted from any damages awarded against the government, *LaSalle Talman,* 317 F.3d at 1372, and because the Agreement at issue here is a contract, the same reasoning applies. In addition, where an insurer has paid the indemnitee's costs, the government argues, the indemnitor will only be required to fulfill its indemnity obligation through a claim of subrogation brought by the insurer, who is the only party to have actually suffered a loss. Here, it is not dis-

puted that there is no formal subrogation claim pending against the United States.[5] In such circumstances, the government asserts that MIT and Dr. Sweet are seeking a double recovery.

While it is true that courts will ordinarily deduct collateral payments from an award in a breach of contract case, it is equally true that this general rule has not been applied in the context of indemnity agreements. *See Carson Village*, 287 F.Supp.2d at 1197 n. 280. The above-cited indemnity cases all stand for the proposition that "insurance" payments are not an absolute bar to recovery under an indemnity agreement. Given the weight of this authority, the court agrees with MIT and Dr. Sweet that *LaSalle Talman* is not controlling in this indemnity case. The Agreement at issue here provides the same broad indemnity to MIT and Dr. Sweet that was provided to the indemnitees in each of the above-cited cases. *See* cases cited *supra* pp. 596–97. In each of the above-cited indemnity cases, as in the present case, the indemnitor agreed to "indemnify and hold harmless" the indemnitee from liability, including the costs incurred in defending against that liability. And in each case, the court held that an indemnitee is entitled to recover from an indemnitor the defense costs incurred by an insurer in defending the indemnitee from claims for liability.

Although the fact that all of MIT's and the greater part of Dr. Sweet's defense costs were paid or provided by their insurers does not bar recovery, this fact is not irrelevant to the next phase of this litigation. In particular, the court will need to resolve whether MIT and Dr. Sweet may maintain an action on behalf of their insurance carriers, under a subrogation theory. The government has not had an opportunity to challenge MIT's

and Dr. Sweet's assertions of a subrogation claim. Indeed, it was not until oral argument that MIT and Dr. Sweet announced that they were pursuing the litigation on behalf of their insurance carriers. Whether the Price–Anderson Act waives immunity for such claims is yet to be decided.[6] In addition, the court will need to determine whether and how defense costs should be allocated between the government and MIT's and Dr. Sweet's insurers under the Agreement.

### B. The Term "Reasonable Costs of Defending Claims" Under the Agreement Includes Reasonable Attorneys' Fees Incurred in Defending the Plaintiffs in the *Heinrich* Litigation

■ The government contends that neither MIT, Dr. Sweet, nor MGH are entitled to reimbursement of attorneys' fees arising from defending claims for public liability under the Agreement. The government argues that the United States has not expressly waived its sovereign immunity to pay attorneys' fees as part of its indemnification obligations under the Price–Anderson Act. Under the "American Rule," a party prevailing in a lawsuit is not ordinarily entitled to recover attorneys' fees from the opposing party, and thus Congress must expressly authorize awards of attorneys' fees for lawsuits against the government in order to waive its sovereign immunity. *See Key Tronic Corp. v. United States*, 511 U.S. 809, 814–15, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) ("Our cases establish that attorney's fees generally are not a recoverable cost of litigation 'absent explicit congressional authorization.' "). The government argues that the Price–Anderson Act's indemnification provisions do not contain such an explicit authorization for the

---

**5.** At oral argument, counsel for MIT and Dr. Sweet represented that they would be required to reimburse their insurers for any defense costs they receive in this litigation. They have not, however, asserted any claim on behalf of their insurers.

**6.** In *Quarles Petroleum Co., Inc. v. United States*, 213 Ct.Cl. 15, 551 F.2d 1201 (1977), similar issues needed to be resolved in the context of claims under the Federal Water Pollution Control Act, 33 U.S.C. § 1321(I)(1) (Supp.V, 1975). There, the statute provided that an "owner or

operator [of a vessel or facility that discharges oil] shall be entitled to recover the reasonable costs incurred in ... removal [of the oil]." The court held not only that "owner or operator" included an insurance company that paid removal costs for the owner or operator, but also that allowing a subrogee to recover did not extend the government's liability beyond what it would owe to the plaintiff directly, and therefore an additional waiver of sovereign immunity for subrogees was unnecessary. 551 F.2d at 1205, 1207.

government to pay attorneys' fees because where Congress intended to provide for the payment of attorneys' fees in the Price–Anderson Act it did so expressly. Def.'s Br. at 13–14. Because Congress did not expressly provide for the payment of attorneys' fees in the indemnity provisions of the Price–Anderson Act, but instead generally referred to "costs" of defending claims, the government contends that the plaintiffs' claims for reimbursement of attorneys' fees must fail.

■ The court disagrees with the government's reading of the Price–Anderson Act. At issue in this case is whether the Price–Anderson Act, as implemented through the Agreement, provides for reimbursement of attorneys' fees as part of the government's obligation to reimburse plaintiffs for "the reasonable costs of ... defending claims for public liability." This question does not implicate the "American Rule" and therefore does not implicate the general rule that the government is not liable to pay attorneys' fees to prevailing parties absent an express waiver of sovereign immunity. In short, this case does not involve "attorneys' fees qua attorneys' fees." *See Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 730–31 n. 5 (5th Cir.1980) (noting that there exists a judicially-created exception to the general rule against the award of attorneys' fees in maritime cases which "allows attorneys' fees to an indemnitee as against his indemnitor—not as attorneys' fees qua attorneys' fees, but as part of the reasonable expenses incurred in defending against the claim"). Rather, the attorneys' fees at issue in this case are the attorneys' fees incurred by an indemnitee, as part of the cost of defending claims for public liability. It is for this reason that the government's reliance on other portions of the Price–Anderson Act which provide for the payment of attorneys' fees to a prevailing party are irrelevant to the issue at hand.[7]

Whether the Price–Anderson Act and the Agreement allow for recovery of attorneys' fees incurred in defending claims for public liability depends on the scope of the indemnity provisions in the Price–Anderson Act and the Agreement. While there are no cases arising under the Price–Anderson Act, it is well established that indemnification clauses that cover the costs of defending claims generally encompass attorneys' fees despite the fact that attorneys' fees were not specifically mentioned. *See* 42 C.J.S. *Indemnity* § 20 (1991) ("As a general rule, an indemnitee is entitled to recover, as part of the damages, reasonable attorney fees, and reasonable and proper legal costs and expenses, even though not expressly mentioned."); *see also Natco Ltd. P'ship v. Moran Towing of Florida, Inc.*, 267 F.3d 1190, 1194 (11th Cir.2001) ("[U]se of the phrase 'any and all loss, damage or liability' in the indemnity provision ... is consistent with the language of numerous other indemnification clauses that we have found to encompass attorneys' fees despite the fact that attorneys' fees were not specifically mentioned."), and cases cited therein; *United States v. GTS Adm. Wm. Callaghan*, 643 F.Supp. 1483, 1484–85 (S.D.N.Y.1986), and cases cited therein. As the United States Court of Appeals for the Second Circuit has stated:

> Indemnity obligations, whether imposed by contract or by law, require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims. Legal fees and expenses incurred in defending an indemnified claim are one such cost and fall squarely within the obligations to indemnify. Consequently, attorneys' fees incurred in defending against liability claims are included as part of an indemnity obligation implied by law, and reimbursement of such fees is presumed to have been the intent of the draftsman unless the agreement explicitly says otherwise.

*Peter Fabrics. Inc. v. S.S. Hermes*, 765 F.2d 306, 316 (2d Cir.1985).

---

7. In particular, the government relies on § 154 of the Price–Anderson Act to show that Congress expressly provided for the payment of attorneys' fees only in connection with actions for the payment of royalty fees under the Act's compulsory patent licensing system. This section creates an exception to the "American Rule" for actions by patent owners against licensees who have failed to pay royalties under the system; it does not inform the court of Congress' intention with regard to indemnification of defense costs under § 170 of the Price–Anderson Act.

In keeping with this authority, the court finds that Congress intended to provide for reimbursement of the attorneys' fees incurred by an indemnitee in defending claims for public liability under § 170 of the Price–Anderson Act. Section 170(k) provides that the government will "indemnify and hold harmless the licensee ... from public liability ... including the reasonable costs of investigating and settling claims and defending suits for damage." Price–Anderson Act § 170(k)(1). Congress is presumed to give words and phrases their common meaning when drafting legislation. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). "Defense costs" or the "costs of defending" necessarily include legal fees. The government has not identified anything in the legislative history of the Price–Anderson Act or in the language of the Agreement which would raise doubts about this construction of the Act or the Agreement.[8] Accordingly, the court finds that § 170(k) of the Price–Anderson Act and the Agreement provide for the reimbursement of reasonable attorneys' fees incurred by the indemnitee in defending claims against public liability.

### C. The Agreement Establishes a Single $250,000 Deductible for the Medical Experiments which were the Subject of the *Heinrich* Litigation

■ The contract provides that:

The obligations of the [government] under this Article shall apply only with respect to such public liability [arising out of a nuclear incident], such damage to property of persons legally liable for the nuclear incident ... and such reasonable costs [of investigating, settling and defending claims for public liability] ... as in the aggregate exceed $250,000.

Agreement, Art. III, ¶ 4(a).

This provision is taken from the Price–Anderson Act, which states:

(1) the Commission shall agree to indemnify and hold harmless the licensee and other persons indemnified, as their interests may appear, from public liability in excess of $250,000 arising from nuclear incidents. The aggregate indemnity for all persons indemnified in connection with each nuclear incident shall not exceed $500,000,000, including the reasonable cost of investigating and settling claims and defending suits for damage ....

Price–Anderson Act § 170(k), Pub.L. No. 85–744, 72 Stat. 837 (1958) (current version at 42 U.S.C. § 2210(k) (2004)).

By their terms the Agreement and the Price–Anderson Act provide that with respect to a single nuclear incident the government is liable for public liability, damage to property, and costs which in the aggregate exceed $250,000. "Nuclear incident" is specifically defined in the Agreement to mean, "any occurrence or series of occurrences at the location ... causing bodily injury, sickness, disease, or death ...." Agreement, Art. I, ¶ 2(a). By its terms the definition contemplates that a single "incident" can involve multiple exposures to different people. Here, a set of specific medical experiments conducted on multiple patients by Dr. Sweet and MGH at the MIT reactor amounted to a single nuclear incident. To hold otherwise would expose the government to greater liability than intended under the Price–Anderson Act. Under the Price–Anderson Act, the government's liability is capped for each "nuclear incident" at $500,000,000. § 170(k)(1). Under the government's proposed reading of the Act and Agreement, that each patient's exposure constitutes a single nuclear incident, the government could face up to more than $2 billion in liability from the MIT reactor experiments. It makes no sense to suggest that the government would agree to billions of dollars of liability arising from a series of medical experiments at the same reactor, but would cap

---

8. Indeed, the government's interpretation of the "costs of defending" could lead to absurd results. If "costs of defending" does not include reasonable attorneys' fees, then Price–Anderson Act indemnitees have no incentive to even hire an attorney, which may result in huge judgments that, indisputably, the government would be required to pay.

its liability at $500,000,000 for a major reactor release. Accordingly, the government's position must be rejected.

■ The court must also reject the government's contention that each plaintiff is subject to a separate $250,000 deductible. This contention also is not consistent with the plain language of the Agreement. As noted above, the Agreement provides that the government will pay *"all persons indemnified"* for public liability, damages, and costs which *"in the aggregate exceed $250,-000."* By using the phrase, *"in the aggregate exceed $250,000,"* the Agreement establishes a single deductible for "all persons indemnified." There is nothing in the Price–Anderson Act or in the Agreement which provides for a separate $250,000 deductible for each person eligible for reimbursement.[9]

### III. The Plaintiffs' Claims for Reimbursement for the Cost of the Pending Case are Premature

The plaintiffs also seek the attorneys' fees and expenses they have incurred in prosecuting the present case under the Agreement. The plaintiffs argue in the alternative that they are entitled to their costs and attorneys' fees for litigating this case under the Equal Access to Justice Act, 28 U.S.C. 2412(b) (2004) ("EAJA"). The government argues in response that the plaintiffs are not entitled to the costs they have incurred in prosecuting the present case under the Agreement. The government also argues that the plaintiffs' EAJA claims are not ripe because a final judgment has not been entered.

■ The court agrees with the government that the plaintiffs are not entitled to attorneys' fees and expenses incurred in enforcing the Agreement. It is well-settled that an indemnitee is not ordinarily entitled to attorneys' fees and costs incurred in establishing the right to indemnification. 41 Am. Jur.2d *Indemnity* § 48 (2004); 42 C.J.S. *In-*

demnity §§ 20, 42 (2004). The only exception to the rule exists where the indemnitor had a duty to defend the underlying action and failed to act after notice of the suit. *See* 1 Insurance Claims & Disputes (Fourth) § 4:33 (2004). Here, the government did not have a duty to defend the underlying action and thus the Agreement for indemnity does not entitle the plaintiffs to attorneys' fees for this action.

The Agreement states in relevant part:

When the Commission determines that the United States will probably be required to make indemnity payments under the provisions of this agreement, the Commission shall have the right to collaborate with the licensee and other persons indemnified in the .... defense of any claim and shall have the right ... to appear through the Attorney General of the United States on behalf of the licensee or other person indemnified, to take charge of such action and settle or defend any such action.

Agreement, Art. IV, ¶ 1.

Thus, the government had the "right" to defend the plaintiffs but not the duty to defend the plaintiffs in the *Heinrich* litigation. Because the right to defend does not create a duty to defend, the plaintiffs have failed to state a claim under the Agreement for the attorneys' fees and expenses they have incurred in connection with the present litigation.

■ In addition, Dr. Sweet is not entitled to the attorneys' fees and expenses he incurred in forcing his private insurer to assume his defense. This claim is simply beyond the scope of the Agreement. The Agreement provides indemnification for reasonable costs incurred in "defending claims for public liability." Agreement, Art. III, ¶ 3. Clearly, Dr. Sweet's action against his insurer did not involve "defending a claim for public liability." As such it is beyond the

---

9. MGH's contention that the $250,000 trigger identified in the Agreement is only a threshold and not a deductible must also be rejected. By its terms, the government is only obligated to indemnify the licensee and other indemnified persons for "such" public liability, damages, and costs "as in the aggregate exceed $250,000."

Agreement, Art. III, ¶ 4(a). The language plainly provides that the government is not obligated for liabilities and costs that do not reach the sum of $250,000, but is obligated to indemnify for any sums above that amount. Such a term is, in essence, a deductible.

scope of the indemnity provision and not recoverable in this case.

Finally, the court agrees with the government that the plaintiffs' alternative grounds for claiming their attorneys' fees in this action, claims pursuant to EAJA, are premature. EAJA authorizes the award of attorneys' fees to the "prevailing party" against the United States. 28 U.S.C. § 2412(d)(1)(A) (2004). EAJA also provides the procedure by which the plaintiffs may claim attorneys' fees against the government: "A party seeking an award of fees and other expenses shall, within thirty days *of final judgment in the action,* submit to the court an application ... which shows that the party is a *prevailing party* ...." 28 U.S.C. § 2412(d)(1)(B) (2004) (emphasis added). EAJA thus authorizes the award of attorneys' fees against the United States only when a party demonstrates that it is the prevailing party in a final judgment. Here, as noted above, this action must proceed further to establish the reasonableness of the plaintiffs' attorneys' fees in the underlying *Heinrich* litigation. Therefore, there is as yet no final judgment, and the award of attorneys' fees against the government in this action would be premature.

## CONCLUSION

Based on the foregoing, the court finds that: (1) MIT and Dr. Sweet are not automatically barred from seeking indemnification for defense costs incurred by their insurers in defending against the claims against them for public liability. In the next phase of this litigation they will have to establish that their insurers are entitled to subrogation under the Price–Anderson Act and the Agreement; (2) to the extent MIT and Dr. Sweet can assert claims on behalf of their insurers, they may seek to establish the "reasonable" attorneys' fees and expenses incurred by the insurers in defending the *Heinrich* litigation; Dr. Sweet and MGH may also seek to establish the "reasonable" attorneys' fees and expenses they separately incurred in defending the *Heinrich* litigation; (3) MIT, Dr. Sweet, and MGH are not entitled to attorneys' fees or expenses incurred in prosecuting this litigation under the

Agreement; (4) Dr. Sweet is not entitled to attorneys' fees and expenses incurred in his suit against his private insurer, under the Agreement; and (5) MIT's, Dr. Sweet's, and MGH's claims for attorneys' fees and expenses under EAJA are premature.